**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02011-NYW-KAS

ANDREW THOMAS SCOTT,

Plaintiff,

v.

MICHAEL ALLEN, in his official capacity as the
District Attorney for the 4th Judicial District of Colorado,

Defendant.

---

**ANDREW THOMAS SCOTT'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Andrew Thomas Scott (Mr. Scott), by and through his attorneys at Montgomery Little & Soran, PC, moves the Court, pursuant to Fed. R. Civ. P. 56, to declare that C.R.S. § 18-9-313 (the Statute) is unconstitutional under the First Amendment to the United States' Constitution.

The Statute criminalizes speech related to the identification of certain classes of individuals engaged in public service, a content-based restriction of speech subject to strict scrutiny. While the Statute invokes the auspices of threats to safety, the notion that identification of a public servant can, in itself, constitute a threat is foreign to the First Amendment. "Simply publishing an officer's phone number, address, and e-mail address is not in itself a threat or serious expression of an intent to commit an unlawful act of violence." *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1248 (N.D. Fla. 2010). Instead, the Statute restricts speech that identifies a public servant when a third-party could use the identification to pose a

threat the public servant's safety. In such contexts, the publisher of the identifying information is blameless unless he advocates imminent lawless action and intends for the harm to in fact manifest.

## UNDISPUTED FACTS

1. Mr. Scott is a process server and the owner of a company in the business of serving process. ECF No. 35, ¶¶ 13-15.
2. Mr. Scott is also a private investigator, licensed in Colorado. ECF No. 35, ¶ 70.
3. On March 12, 2021, Mr. Scott was asked, by attorney Joseph C. Maher's office, to serve a subpoena from the Colorado Department of Revenue upon Trooper Hiller. ECF No. 35, ¶¶ 21-22; Exhibit 1.
4. The Subpoena compelled Trooper Hiller to attend a hearing, to be held virtually, on March 24, 2021. Exhibit 1.
5. From March 12, 2021, through March 16, 2021, Mr. Scott attempted to coordinate with Trooper Hiller a time and place for service, but Trooper Hiller failed or refused to do so. ECF No. 35, ¶¶ 23-28, 30; Exhibit 2 (written correspondence between Mr. Scott and Trooper Hiller).
6. On March 17, 2021, When Mr. Scott arrived at Trooper Hiller's home, his wife answered the door and tried to get Trooper Hiller, but he refused to come to the door to receive the Subpoena. ECF No. 35, ¶¶ 32-37.
7. Mr. Scott taped the Subpoena to Trooper Hiller's front door. ECF No. 35, ¶ 38.
8. On March 17, 2021, Mr. Scott lawfully served a subpoena, to Trooper Charles David Hiller (Trooper Hiller). ECF No 35, ¶¶ 31-44.

9. Mr. Scott completed an affidavit of service by refusal (hereinafter, the Affidavit of Service), in which he recounted his efforts to serve Trooper Hiller and which included Trooper Hiller's full name, date of birth, address, phone number, vehicle description and license place, and his wife's full name and date of birth. ECF No. 35, ¶ 44; Exhibit 2, p. 7.

10. Mr. Scott wore a body camera on March 17, 2021, while attempting to serve the Subpoena upon Trooper Hiller, which made a true and accurate video recording of Mr. Scott's efforts to effectuate service, including but not limited to the First Encounter and the Second Encounter with Trooper Hiller's wife (hereinafter, the Video). ECF No. 35, ¶ 41.

11. Trooper Hiller expressly asserted that Mr. Scott's Affidavit of Service contained "lies" and expressly asserted that it posed a threat to his and his family's safety simply because it contained personal identifying information. ECF No. 35, ¶¶ 51- 53.

12. Trooper Hiller implicitly asserted a violation of the Statute.

13. Moments after Mr. Scott left Trooper Hiller's residence, Trooper Hiller sent an email to Mr. Scott, on March 17, 2021, directing that Mr. Scott travel to Divide, Colorado that evening to complete service. ECF No. 35, ¶ 43; Exhibit 2, p. 6.

14. Mr. Scott responded to that email and attached the Affidavit of Service, indicating that service was already completed. ECF No. 35, ¶ 47; Exhibit 2, p. 7.

15. Later on March 17, 2021, Mr. Maher agreed, in writing, to redact Trooper Hiller's personal identifying information from the Affidavit of Service "before filing" it with the Department of Revenue. Exhibit 3, p. 3.

16. On or before March 23, 2021, Trooper Hiller filed a complaint against Mr. Scott with the Colorado Department of Regulatory Agencies, Office of Private Investigator Licensure, in which he asserted that the affidavit made his personal information public. ECF No. 35, ¶¶ 49, 70; Exhibit 4.

17. Mr. Scott immediately notified, on March 23, 2021, Mr. Maher's office of Trooper Hiller's complaint, in advance of the hearing before the Department of Review on March 24, 2021. ECF No. Exhibit 5.

18. Trooper Hiller also filed another version of his complaint with Mr. Maher's office earlier on March 23, 2021. Exhibit 3 (Trooper Hiller's email to Mr. Maher); Exhibit 6 (notice from Mr. Maher's office to Mr. Scott).

19. On April 7, 2021, Trooper Hiller filed a version of his complaint with the Process Servers Association of Colorado. Exhibit 9.

20. In his complaints, Trooper Hiller asserted that Mr. Scott "deliberately and intentionally added [] personal information about me and my family to an affidavit" and that this was done "intentionally and deliberately [to] jeopardize[] my safety, along with my family's safety." Exhibits 4, 6, and 9.

21. On April 1, 2021, Mr. Scott filed a response to Trooper Hiller's complaint with the Office of Private Investigator Licensure, Exhibit 7.

22. Mr. Scott shared his response with Mr. Maher's office on April 1, 2021, Exhibit 8.

23. Mr. Scott shared his response with the Process Servers Association of Colorado on April 7, 2021, Exhibit 10.

24. On May 19, 2021, the Office of Private Investigator Licensure dismissed Trooper Hiller's complaint due to "insufficient grounds to warrant the commencement of formal disciplinary proceeding." Exhibit 12.

25. Mr. Maher's office had indicated that it was "not upset at all with how [Mr. Scott] handled this service." Exhibit 5, p. 3.

26. On April 27, 2021, the Process Servers Association of Colorado expelled Mr. Scott from membership in the association in view of Trooper Hiller implicit assertion that Mr. Scott violated the Statute. Exhibit 11.

27. The Association explicitly found that Mr. Scott violated "the Colorado Revised Statute regarding disclosure of law enforcement personal information" and attached the Statute. ECF No. Exhibit 11, p. 1.

28. Mr. Scott verified the forgoing facts. Affidavit of Andrew Thomas Scott, ¶¶ 5, 10-11, 13-21.

29. Mr. Scott wishes to publicly publish, in the future, the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet to publicly defend himself against Trooper Hillers' accusations and to hold him to public account. Affidavit of Andrew Thomas Scott, ¶ 8.

30. Mr. Scott intends to develop a website that can assist the citizens of Colorado in locating law enforcement officers for the purpose of serving process or subpoenas upon the law enforcement officers, potentially including publication of personal identifying information. Such a tool will assist citizens in exercising their right to petition the

government for redress and their right to question law enforcement officers who may make allegations against them. Affidavit of Andrew Thomas Scott, ¶ 27.

31. Mr. Scott intends to develop a website where members of the public can post information about law enforcement officers as may be necessary and appropriate to holding them to account for irresponsible or inappropriate conduct, including publication of their personal identifying information. Affidavit of Andrew Thomas Scott, ¶ 28.

## ARGUMENT

Colorado's Statute criminalizes speech that identifies public servants to the public based upon the premise that sometimes public identification could threaten the servant's safety. This content-based restriction fails strict scrutiny. While the statute has the façade of proscribing threats, it does not proscribe speech that is itself a "true threat" (in the jurisprudential sense of the phrase) but rather speech that could be used by another to create a risk of harm. Further, the Statute cannot be saved by the jurisprudence of incitement because it does not proscribe speech that is directing at causing imminent lawless action.

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law … abridging the freedom of speech." *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 1547, 155 L. Ed. 2d 535 (2003). The First Amendment protects speech related to police officers.

> [T]he issue of police accountability is certainly political and of legitimate public interest. The publication of ***truthful personal [identifying] information*** about police officers is linked to the issue of police accountability through aiding in achieving service of process, researching criminal history of officers, organizing lawful pickets, and other peaceful and lawful forms of civic involvement that publicize the issue."

*Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1249 (N.D. Fla. 2010) (citing *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1139, n.2 (W.D. Wash. 2003) (emphasis added). "The issue of police accountability was 'of legitimate public interest,' and the 'publication of truthful personal information about police officers is linked' to that interest 'through aiding in achieving service of process, researching criminal history of officers, organizing lawful pickets, and other peaceful and lawful forms of civic involvement that publicize the issue.'" *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1015 (E.D. Cal. 2017) (quoting with approval *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1249 (N.D. Fla. 2010)). Mr. Scott seeks to engage in precise that kind of speech by identifying Trooper Hiller, his intentional avoidance of service of process, and his vindictive falsehoods. Affidavit of Andrew Thomas Scott, ¶¶ 8, 27, 28. This speech is a matter police accountability and a matter of a legitimate public interest. The government "may not constitutionally punish publication of [such truthful information about a matter of public significance] information, absent a need to further a state interest of the highest order." *The Florida Star v. B.J.F.*, 491 U.S. 524, 533, 109 S. Ct. 2603, 2609, 105 L. Ed. 2d 443 (1989). The burden is on the government to prove that the Statute as written is the least restrictive means to serve a compelling state interest.

The Statute establishes a content-based restriction of speech by prohibiting the public identification of public servants on the internet. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)).

"As a general matter, 'state action to punish the publication of truthful information seldom can satisfy constitutional standards.'" *Bartnicki v. Vopper*, 532 U.S. 514, 527, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001) (quoting *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 102, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979)), *as applied by Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1013 (E.D. Cal. 2017).

The Statute lacks a compelling interest in shielding the identity of public servants from the public. To the contrary, as shown above, the First Amended protects, at its core, speech about our public servants, including identification of peace officers. A context of a risk of harm from third-persons does not establish the compelling state interest. "Any third party wishing to actually harm or intimidate these individuals may freely acquire the personal identifying information from myriad public and private sources, including for-profit commercial entities, without entering the scope of the statute." *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1147 (W.D. Wash. 2003). More fundamentally, the Statute is not narrowly tailored to the purported interest in curtailing the risk of harm form third-person because the State may regulate the harm directly. Colorado has laws against assaulting peace officers, harassment, menacing, stalking, along with a myriad of statute protecting citizens and peace officers directly. *Counterman v. Colorado*, 143 S. Ct. 2106, 2132, 216 L. Ed. 2d 775 (2023) (there are few First Amendment "concerns with stalking laws that punish repeated, targeted, unwanted conduct and accompanying speech) (Sotomayor, J., concurring). The Statute at issue curtails public discourse about public officials.

The Statute's restrictions of speech regarding our public servants does not pass constitutional muster under the "well-defined and narrowly limited" categories of proscribable

speech—not as a threat and not as incitement. *United States v. Stevens*, 559 U.S. 460, 468–69, 130 S. Ct. 1577, 1584, 176 L. Ed. 2d 435 (2010). In *Counterman v. Colorado*, the Supreme Court recently drew "a hard line between the two." 143 S. Ct. 2106, 2128, 216 L. Ed. 2d 775 (2023) (Sotomayor, J., concurring).[1] The public identification of a public servant is not a itself a threat and is not directed encouraging at imminent lawless action.

The premise of the Statute is that public identification of a public servant could, hypothetically in some situations, create a risk of harm to the servant from persons other than the speaker. Although the Statute uses the word "threat," it does not regard the kind of threat beyond the protections of the First Amendment. The Statute does not curtail true threats directed to the public servant. "Simply publishing an officer's phone number, address, and e-mail address is not in itself a threat or serious expression of an intent to commit an unlawful act of violence." *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1248 (N.D. Fla. 2010). "[T]he release of personal information, even with the intent to intimidate, is not per se a true threat." *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1248 (N.D. Fla. 2010). "Merely publishing an officer's address and phone number, even with intent to intimidate, is not a 'true threat' as defined in constitutional law jurisprudence." *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244, 1248 (N.D. Fla. 2010)

A threat is found in "'what the statement conveys' ***to the person on the other end***," including "fear of violence." *Counterman v. Colorado*, 143 S. Ct. 2106, 2114, 216 L. Ed. 2d 775

[1] The Tenth Circuit, in a case were a criminal defendant made requests for third-parties to kill certain people, declined to form a "wooden" separation between jurisprudence of threats and incitement, reasoning that the solicitations for "followers to kill specific individuals can produce fear in a recipient no less than more traditional forms of threats." *United States v. Wheeler*, 776 F.3d 736, 745 (10th Cir. 2015). Because the publication of a peace officer's identity is not itself threatening, *see Brayshaw*, 709 F. Supp. 2d at 1248, this Court need not decide whether the Supreme Court's opinion in Counterman abrogated the Tenth Circuit's opinion in *Wheeler*.

(2023) (emphasis added). Threats are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence." *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 1548, 155 L.Ed.2d 535 (2003). "To fall outside of the First Amendment's protections, a threat must 'according to its language and context convey[ ] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic, unpleasantly sharp attacks on government and public officials.'" *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) (quoting *United States v. Crews*, 781 F.2d 826, 832 (10th Cir.1986). "'The question is whether those who hear or read the threat reasonably consider that an actual threat has been made.'" *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) (quoting *United States v. Viefhaus*, 168 F.3d 392, 395–96 (10th Cir. 1999)). By definition, a threat is an objective "'expression of an intention to inflict loss or harm" regardless of the author's subjective *mens rea*. *Elonis v. United States*, 575 U.S. 723, 733, 135 S. Ct. 2001, 2008, 192 L. Ed. 2d 1 (2015). "Whether a particular statement may properly be considered to be a threat [for purposes of the First Amendment] is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1074 (9th Cir. 2002), as amended (July 10, 2002). Such expressions of harm may be restricted by that state upon a recklessness *mens rea*. *Counterman v. Colorado*, 143 S. Ct. 2106, 2112, 216 L. Ed. 2d 775 (2023).

Mr. Scott does not seek to address speech at Trooper Hiller and is not threatening Trooper Hiller. The Statute, by its terms, is not tailored to speech that communicates a threat of

harm but rather impermissibly regulates publication "on the internet" of personal information that could be used by another to inflict harm. The disconnect between the speaker and the tortfeasor who may ultimately inflict harm makes the speech "otherwise innocent conduct." *Counterman v. Colorado*, 143 S. Ct. 2106, 2140, 216 L. Ed. 2d 775 (2023) (Barret, J. dissenting). It is only "the threatening nature of the communication" that "makes the conduct 'wrongful.'" *Counterman v. Colorado*, 143 S. Ct. 2106, 2140, 216 L. Ed. 2d 775 (2023) (Barret, J., dissenting). Mr. Scott's publication of the Video and Affidavit of Service is not directed at Trooper Hiller and is not itself threatening. Mr. Scott wishes to speak to the public at large to identify Trooper Hiller and advocate that Trooper Hiller, who has made vindictive and demonstrably false accusations, is unworthy of the trust confided in him by the people of Colorado. The identification of Trooper Hiller by itself cannot be threatening; there must be more before the speech falls beyond the protections of the First Amendment.

*Arguendo*, that something more could be found in *advocacy* of imminent lawless *action* (that is, incitement) or in knowledge, from a unique set of facts, about a serious and imminent threat. The Statute does not proscribe advocacy of action, and it is impermissibly vague as to the knowledge of a serious and imminent threat to safety.

Incitement is found in public "statements '***directed*** [at] producing ***imminent*** lawless ***action***,' [by others] and likely to do so." *Counterman v. Colorado*, 143 S. Ct. 2106, 2114, 216 L. Ed. 2d 775 (2023) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)) (emphasis added). The "First Amendment precludes punishment," of the speaker "whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115, 216 L. Ed. 2d 775 (2023).

When speech is "not directed to any person or group of persons, it cannot be . . . advocating, in the normal sense, any action" and, thus, cannot be proscribed as incitement. *Hess v. Indiana*, 414 U.S. 105, 108–09, 94 S. Ct. 326, 329, 38 L. Ed. 2d 303 (1973). An intentional *mens rea* is required because "incitement to disorder is commonly a hair's-breadth away from political 'advocacy.'" *Counterman v. Colorado*, 143 S. Ct. 2106, 2118, 216 L. Ed. 2d 775 (2023). The public identification of Trooper Hiller and the facts associated with the attempts to serve the subpoena do not direct, incite, much less encourage, any action by members of the public. Mr. Scott wishes to advocate that Trooper Hiller is vindictive and untrustworthy, and to argue that the state should establish mechanisms to facilitate the service of legal process to peace officers. Mr. Scott's speech does not instruct how members of the public are to react to such information. More importantly, the Statute is not written to proscribe advocacy of lawless action and cannot be saved under the jurisprudence of incitement.

Therefore, the Statute, is facially infirm as it, by its plain terms, does not regulate threats nor incitement. As applied, Mr. Scott's speech does not communicate an intention to harm Trooper Hiller or his family and does not advocate imminent lawless action.

The Statute cannot be saved by tying the speaker's knowledges of a risk of harm posed by another individual for either of two reasons. First, even assuming *arguendo* that such a novel construct was permitted to expand the "well-defined and narrowly limited" categories of proscribable speech, *United States v. Stevens*, 559 U.S. 460, 468–69, 130 S. Ct. 1577, 1584, 176 L. Ed. 2d 435 (2010), the First Amendment would require the highest *mens rea* of intentionality and purposefulness. That is so because the speech concerned regard protected speech of political accountability that does not itself communicate harm and is not directed at advocating imminent

harm. That is where the Supreme Court "demand[s] a showing of intent." *Counterman v. Colorado*, 143 S. Ct. 2106, 2118, 216 L. Ed. 2d 775 (2023) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Hess v. Indiana*, 414 U.S. 105, 106, 94 S. Ct. 326, 327, 38 L. Ed. 2d 303 (1973); *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 928, 102 S. Ct. 3409, 3434, 73 L. Ed. 2d 1215 (1982)). "To rule otherwise would ignore the 'profound national commitment' that 'debate on public issues should be uninhibited, robust, and wide-open.'" *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 928, 102 S. Ct. 3409, 3434, 73 L. Ed. 2d 1215 (1982) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 720, 11 L. Ed. 2d 686 (1964))

Second, the Statute is vague. The Statute says that speech of identification is barred when the speaker "knows or reasonably should know" of "an imminent and serious threat to the protected person's safety." C.R.S. § 18-9-313(2.7). "[A] defendant generally must 'know the facts that make his conduct fit the definition of the offense,' even if he does not know that those facts give rise to a crime." *Elonis v. United States*, 575 U.S. 723, 735. (2015) (quoting *Staples v. United States*, 511 U.S. 600, 608, n. 3, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). A statute is void for vagueness when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845, 170 L. Ed. 2d 650 (2008). "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845, 170 L. Ed. 2d 650 (2008)

The Statute is vague because it fails to describe which online publications of personal information pose an "imminent and serious threat to the protected person's safety." The Statute assumes that by making a personal identifying information publicly available "on the intent" that a risk to harm may follow. The internet of course is ubiquitous and can be researched by anyone, including those who actively wish to do harm to peace officers. What is meant by safety? Would a rally outside a police station to chant "disgraceful" constitute a safety risk? What about a lawful assembly outside the officer's home? What if those assembled were all former convicts? Alternatively, if a man who was inappropriately arrested on a firearms-charge truthfully identifies the arresting officer by his picture and home address and complains of the officer's conduct on a website where Second Amendment advocates congregate, does that pose a serious threat to the officer's safety? The Statute fails to give a notice as to the standards by which a citizen may determine whether the publication poses a "imminent and serious" threat to the public servant's "safety." In this case, Trooper Hiller asserts that the filing of the Affidavit of Service, which contains his personal information, with the Department of Revenue, is a threat to his safety. Exhibit 4, 6, and 9. Is he right? How serious must the threat be? The Statute gives no standard.

The Statute's content-based restriction of speech fails strict scrutiny. The failure of the General Assembly to draw a narrowly tailored Statute to proscribe true threats and incitement is fatal to the Statute. The government may not proscribe protected speech merely because it could cause harm; such speech may only be proscribed when it is intended to cause harm. Lacking a definition of "safety" and "seriousness," the Statute is unconstitutionally vague.

## CONCLUSION

For all the forgoing reasons, the Court should grant summary judgment in Mr. Scott's favor and declare that C.R.S. § 18-9-313 (the Statute) is unconstitutional under the First Amendment to the United States' Constitution.

Dated: September 14, 2023.

Respectfully Submitted,

Jason C. Kennedy, Esq.
Sibylle M. Clark, Esq.
MONTGOMERY LITTLE & SORAN, PC
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Telephone: (303) 773-8100
Fax: (303) 220-0412
jkennedy@montgomerylittle.com
sclark@montgomerylittle.com

*Attorneys for Andrew Thomas Scott*