**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02011-NWY-KAS

ANDREW THOMAS SCOTT,

Plaintiff,

v.

MICHAEL ALLEN, individually and in his official capacity as
The District Attorney for the 4th Judicial District of Colorado,

Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant, District Attorney Michael Allen ("DA Allen"), by and through the Office of the County Attorney of El Paso County, Colorado moves this Court for Summary Judgment as to Plaintiff's claims that C.R.S. § 18-9-313(2.7) is unconstitutional and in support thereof, DA Allen states as follows:

## I. CERTIFICATION OF CONFERRAL

On July 14, 2023, the Parties filed a Joint Status Report with this Court advising the Court that counsel for the Parties had conferred and agreed that cross motions for summary judgment was the appropriate procedural process to dispose of Plaintiff's claim against the constitutionality of C.R.S. § 18-9-313(2.7). In response to the Parties Joint Status Report the Court set a deadline of September 15, 2023, for filing the dispositive motions in this case. The instant Defendant's Motion for Summary Judgment complies with the Court's Order.

## II. INTRODUCTION

Plaintiff sues DA Allen for a declaratory judgment that C.R.S. §18-9-313(2.7) is unconstitutional on its face and unconstitutional in its application to the facts of this case. *See* generally, Andrew Thomas Scott's First Amended Complaint, ECF 35, filed January 13, 2022 (hereinafter ECF 35, ¶______ ). The pertinent portion of the statute challenged by Plaintiff states:

> It is unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family if the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

C.R.S. § 18-9-313(2.7).

Through various pleadings in this action, multiple motions to dismiss and the Court's Order [ECF 104] issued October 3, 2022, DA Allen, in his official capacity as the District Attorney for the 4th Judicial District of the State of Colorado, is the only remaining Defendant in this action. After multiple motions to dismiss filed by the original Defendants in this case, Plaintiff's claim that C.R.S. § 18-9-313(2.7 is unconstitutional on its face is the only claim remaining.

Plaintiff asserts that on March 17, 2021, he served a Subpoena on Colorado State Patrol Trooper Charles Hiller at his home. After unsuccessfully trying to coordinate a time for service of the Subpoena, Plaintiff went to Trooper Hiller's personal residence to attempt service of the Subpoena. Trooper Hiller's wife answered the door and spoke with Plaintiff, but Trooper Hiller would not come to the door for service of the Subpoena. Trooper Hiller's wife went into the

home and closed the door, presumably to discuss the matter with Trooper Hiller, but then did not return to the door despite Plaintiff's loud knocking. Plaintiff then taped the Subpoena to the front door and filed a return of service indicating the Subpoena was served by refusal. During the time that Plaintiff was serving the Subpoena at Trooper Hiller's home, Plaintiff wore a body camera that created a video of Plaintiff's service of the Subpoena. Plaintiff now desires to post an unedited version of the video to the internet. The video purportedly shows some of Trooper Hiller's personally protected information ("PPI") such as his home address and the license plate of his personal vehicle.

DA Allen disputes Plaintiff's assertion of unconstitutionality of the statute as the statute provides a permissible limitation on Plaintiff's First Amendment right to free speech and there are conceivable circumstances in which the statute can be applied in a constitutionally permissible manner. DA Allen asserts that the video can easily be edited to block disclosure of Trooper Hiller's PPI and thwart any feared prosecution for violation of C.R.S. § 18-9-313(2.7).

## III. STATEMENT OF FACTS

1. Plaintiff Andrew Thomas Scott ("Mr. Scott") is a professional process server. *See* First Amended Complaint (ECF 35), p. 7, ¶13 (hereinafter FAC, p. __, ¶__).

2. Charles Hiller, is a "peace officer" as defined in C.R.S. §§ 16-2.5-101, and 16-2.5-114, and 18-9-313(1)(k). *See also* FAC, p. 7, ¶11.

3. Trooper Hiller is a "protected person" as defined in C.R.S. § 18-9-313(1)(n). *See also* FAC, p. 7, ¶11.

4. Trooper Hiller's wife shares the same protected person status as Trooper Hiller pursuant to C.R.S. § 18-9-313(2.7). *See also* FAC, p. 7, ¶12.

5. On March 17, 2021, at approximately 8:44 a.m., Mr. Scott reported to Trooper Hiller's residence to serve a subpoena. FAC, p. 9, ¶31.

6. Trooper Hiller's wife answered the door and had a discussion with Mr. Scott regarding the subpoena he was there to serve on her husband. Trooper Hiller's wife advise Mr.

Scott that Trooper Hiller was sleeping but she would check with him and come back. She then closed the door while Mr. Scott waited outside. FAC, p. 9, ¶32.

7. Approximately one minute later Trooper Hiller's wife returned to the front door and had a subsequent discussion with Mr. Scott related to the subpoena. Trooper Hiller's wife then closed the door again while Mr. Scott waited outside. FAC, p. 9, ¶33.

8. After several minutes of waiting Mr. Scott loudly knocked on the front door but no one answered the door. FAC, p. 10, ¶37.

9. Mr. Scott then taped the subpoena he was there to serve to the front door of Trooper Hiller's home. FAC, p. 10, ¶38.

10. During his service of the subpoena at Trooper Hiller's residence Mr. Scott wore a body camera that preserved the events of that day and time on video tape. FAC, p. 10, ¶41.

11. Later that same day (March 17, 2021), Mr. Scott completed an Affidavit of Service for the subpoena he served on Trooper Hiller by posting it the front door after Trooper Hiller refused to come to the door to receive the subpoena. Mr. Scott Affidavit of Service contained "personal information" (as that term is defined in C.R.S. § 18-9-313(1)(l)) of Trooper Hiller and his wife. FAC, 1p. 11, ¶¶44-45.

12. Mr. Scott sent a copy of the Affidavit of Service containing the personal information of Trooper Hiller and his wife to Trooper Hiller and indicated that he was going to file the Affidavit of Service with the Court. FAN, p. 11, ¶47.

13. Trooper Hiller made statements that Mr. Scott "deliberately and intentionally" included personal information for he and his wife in the Affidavit of Service because the criminals will see it. FAC, p. 15, ¶67.

14. Trooper Hiller also accused Mr. Scott of "intentionally and deliberately jeopardize[ing] [his] safety along with [his] family's safety." FAC, p. 15, ¶68.

15. Mr. Scott intends to publish on the internet a detailed, unredacted, and truthful report of his experience with Trooper Hiller and to inform others of his opinion of Trooper Hiller. FAC, p. 17, ¶85.

16. Mr. Scott intends to post online the video recorded by his body camera, which depicts Trooper Hiller's home and vehicles and further depicts Mr. Scott's contact with Trooper Hiller's wife. FAC, p. 17, ¶86.

17. Mr. Scott intends to publish online the Affidavit of Service which contains Trooper Hiller's personal information as well as the personal information about Tropper Hiller's wife. FAC, p. 17, ¶87.

18. Mr. Scott fears arrest and prosecution under C.R.S. § 18-9-313(2.7) if he publishes the video and the Affidavit of Service online. FAC, p. 17, ¶89.

## IV. STANDARD OF REVIEW

Plaintiff's First Amended Complaint (ECF-35) contains two claims for relief seeking: (1) a declaration that C.R.S. § 18-9-313(2.7) is unconstitutional on its face as it proscribes online publication of a protected persons personal information which amounts to a content-based restriction on his First Amendment right to free speech; and (2) a declaration that C.R.S. § 18-9-313(2.7) is unconstitutional as applied to publication of the video, the Affidavit of Service and the personal information for Trooper Hiller and his wife.

Under Colorado law, statutes are presumed to comport with constitutional standards. *People v. McCullough*, 6 P.3d 774, 779 (Colo., 2000). "[A] defendant has the burden of establishing the unconstitutionality of a statute, as applied, beyond a reasonable doubt." *People v. Gutierrez*, 622 P.2d 547, 555 (Colo., 1981) accord *People v. Moore*, 562 P.2d 749, 751, 193 Colo. 81, 84 (Colo. 1977) ("It is a fundamental and frequently articulated rule that a statute is presumed to be constitutional, and one who attacks it has the burden to prove it unconstitutional beyond a reasonable doubt."). "A statute that is unconstitutionally applied may, nonetheless, be facially valid if there are conceivable circumstances in which it can be constitutionally applied." *People v. Perez–Hernandez*, 348 P.3d 451, 455–56 (Colo.App., 2013); *Independence Inst. v. Coffman,* 209 P.3d 1130, 1136 (Colo.App.2008) ("As-applied constitutional challenges attempt to invalidate a law only in the circumstances in which a party has acted or proposes to act; thus, a law that is held invalid as applied is not rendered completely inoperative.").

"A party challenging the facial validity of a statute must prove that it is unconstitutional beyond a reasonable doubt." *Perez-Hernandez*, 348 P.3d at 456 citing *People v. Vasquez,* 84

P.3d 1019, 1021–22 (Colo., 2004). "'A statute is facially unconstitutional only if no conceivable set of circumstances exist under which it may be applied in a constitutionally permissible manner.'" *Id.* at 456 quoting *People v. Montour,* 157 P.3d 489, 499 (Colo., 2007). "[C]ourts should not seek to discover means to hold a statute unconstitutional." *Moore*, 562 P.2d at 751.

## V. ARGUMENT

Plaintiff seeks a declaration from this Court that C.R.S. § 18-9-313(2.7) is unconstitutional on its face based because it proscribes online publication of a protected person's personal information. FAC, p.18, ¶94-95. In pertinent part C.R.S. § 18-9-313(2.7) states:

> It is unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family if the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

C.R.S. § 18-9-313(2.7). The posting of a protected person's personal information on the internet is a class 1 misdemeanor. C.R.S. § 18-9-313(3). Plaintiff asserts that the statute's criminalization of posting the personal information of a protected person on the internet is unconstitutional because it restricts content-based speech. FAC, p.18, ¶96. Defendant does not dispute that the statute presents a content-based restriction of speech.

"[T]he First Amendment provides that Congress shall make no law abridging the freedom of speech. Above all else, the First Amendment means that government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2346 (U.S., 2020) (Internal quotation marks omitted). However, this Court's "precedents allow the government to

constitutionally impose reasonable time, place, and manner regulations on speech, but the precedents restrict the government from discriminating in the regulation of expression on the basis of the content of that expression." *Barr,* 140 S.Ct. at 2346 (Internal quotation marks omitted). "Content-based laws are subject to strict scrutiny" while "content-neutral laws are subject to a lower level of scrutiny." *Id.* at 2346 (Internal quotation marks omitted). "[A] law is content-based if a regulation of speech on its face draws distinctions based on the message a speaker conveys." *Id.* (Internal quotation marks omitted); *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (U.S., 2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny. *Reed*, 576 U.S. at 163–64.

Provisions which impose content-based restrictions on speech can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest., 576 U.S. at 171; accord *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1057 (Colo., 2002) ("In order to withstand strict scrutiny, the government must have some 'compelling' interest at stake, [a]nything less will not justify an abridgement of fundamental speech rights." (Internal citation omitted)). "[F]acially '[c]ontent-based laws … are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Peck v. McCann*, 43 F.4th 1116, 1134 (10th Cir., 2022) quoting *Reed*, 576 U.S. at

163; *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989) (Any statute making it a punishable offense to publish information based on its content will be viewed skeptically and will be found unconstitutional unless it is the least restrictive means to achieve a compelling government objective and is narrowly tailored to penalize no more speech than necessary to accomplish that objective.).

In 2007, Congress passed the Court Security Improvement Act, which included measures aimed at protecting federal legal system workers from threatening or intimidating disclosures. 18 U.S.C. § 119. The law criminalizes public disclosure of "restricted personal information" about a covered person or their immediate family member "with the intent to threaten, intimidate, or incite the commission of a crime of violence' against that person or their family member." *Id.* "[R]estricted personal information" means the person's social security number, home address, home phone number, mobile phone number, personal email, or home fax number. *Id.* Colorado's In 2002 Colorado enacted a statute that outlawed knowingly sharing personal information online about a peace officer, judge or prosecutor or members of their immediate family. C.R.S.§ 18-9-313(2.7). The Colorado statute was expanded in 2021 to include health care workers and their families following an uptick in targeting of health care workers due to responses to the COVID-19 pandemic. Misdemeanor criminal penalties await those who violate the statute if the posting presents an "imminent and serious threat" to the protected person's safety, and the person making the information available on the internet "knows or reasonably should know of the imminent and serious threat." C.R.S. § 18-9-313(2.7).

In the case at bar the parties identified the underlying question regarding the constitutionality of C.R.S. § 18-9-313(2.7) thusly: "whether a statute may constitutionally

proscribe speech characterized as *truly threatening* when the speaker did not subjectively intend the threat."[1] *See* Joint Motion for Extension of Time to File Dispositive Motions (ECF 111), p. 2, ¶4 (*emphasis* added).[2] "'True threats encompass those statements *where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence* to a particular individual or group of individuals.'" *U.S. v. Heineman*, 767 F.3d 970, 976 (10th Cir., 2014) quoting *Virginia v. Black* ("*Black*"), 538 U.S. 343, 359 (2003) (*emphasis* in original).

True threats enjoy no constitutional protection. *Black*, 538 U.S. at 359. "[T]here are good reasons for that rule: True threats inflict great harm and have little if any social value[, can] cause serious emotional stress for the person threatened and those who care about that person, and [ ] may lead to a violent confrontation. *Elonis v. U.S.*, 575 U.S. 723, 746 (U.S., 2015). Further, although the "true threat" exception conflicts with the principles of free speech, the Supreme Court has reasoned that this restriction on speech "protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur...." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). While this case itself does not involve a "true threat" the reasoning behind the true threat exception to the principles of free speech provides a foundation for the government's compelling interest to satisfy the strict scrutiny requirement for the statute's prohibition of the online publication of personal information of a protected person and their spouse. Specifically, the state has an interest in protecting the classifications of workers set forth in the statute from threats that can cause serious

[1] Upon further review the facts of this case do not lend themselves to the idea that the publication of a protected person's personal information constitutes a "true threat."
[2] The impetus behind the parties' filing of ECF 111 was the impending decision in *Counterman v. Colorado*. *Id.*, p. 3 at ¶7.

emotional stress from the fear of violence, from the disruption of life's activities that fear engenders, and from the possibility that the threatened violence will occur. *Elonis*, 575 U.S. at 746 and *R.A.V.*, 505 U.S. at 388.

The holding in *Counterman* is not applicable to the case at bar as *Counterman* involves a true threat. *Counterman v. Colorado*, 600 U.S. 66 (2023) (The State must prove in true-threats cases that the defendant had some subjective understanding of his statements' threatening nature, but the First Amendment requires no more demanding a showing than recklessness.). In fact, *Counterman* never raises or addresses the statute at issue in this case, to wit, C.R.S. § 18-9-313(2.7). As Counterman is wholly distinguishable from this case, it provides very little value for the determination of the instant question as to the constitutionality of § 18-9-313(2.7).

Plaintiff's challenge to the facial validity of § 18-9-313(2.7) must fail as Plaintiff failed to prove that the statute is unconstitutional beyond a reasonable doubt. *Perez-Hernandez*, 348 P.3d at 456. Plaintiff's First Claim for Relief seeks a declaration that the Statute is unconstitutional on its face. FAC, p. 18, ¶94. Thereafter, it incorporates by reference the factual allegations contained within the FAC. (FAC, p. 18, ¶95). However, Plaintiff makes no attempt in the First Claim for Relief to identify which of the incorporated facts support the legal conclusions that make up his First Claim for Relief. For example, Plaintiff makes multiple references in his First Claim for Relief that the statute is not tailored to proscribe the "true threats" at which the statute is aimed but provides no support for his naked legal conclusions. Consequently, this Court is left with only Plaintiff's naked legal conclusions without benefit of any argument or factual support; making it impossible for this Court to find that Plaintiff proved the statute unconstitutional beyond a reasonable doubt.

Finally, Plaintiff, for his Second Claim for Relief, "seeks a declaration that the statute is unconstitutional as applied to publication of the Video, the Affidavit of Service and Trooper Hiller's personal identifying information contained therein." FAC, p. 19, ¶103. Plaintiff asserts that he "intends to publish the Video and the Affidavit of Service to publicly corroborate his versions of events, to publicly defend against Trooper Hiller's accusations, and to publicly hold Trooper Hiller to account for his attempt to evade service and for his false accusations against [him]." FAC, p. 19-20, ¶107. However, were that Plaintiff's true intention he could accomplish it without providing the personal information proscribed by the statute. Plaintiff could easily blur Trooper Hiller's wife's face, along with any footage showing their home address or license plates on their cars and can bleep over or erase any reference to her name and date of birth. The proscribed information could also easily be redacted from the Affidavit of Service. Certainly, even with the personal information blurred and/or redacted from the Video and the Affidavit of Service, enough information or dialogue would remain to prove his version of the facts and provide him with the vindication he so desperately wants.

## CONCLUSION

For all of the foregoing reasons, Plaintiff has failed to prove that C.R.S. § 18-9-313(2.7) is unconstitutional either on it face or in its application to the facts of this case.

**WHEREFORE**, Defendant, DA Allen, respectfully requests this Honorable Court grant his Motion for Summary Judgment; dismiss Plaintiff's First Amended Complaint with prejudice; and grant him his reasonable attorney fees and costs and any other relief the Court deems appropriate under the law.

Respectfully submitted this 15th day of September 2023.

By: s/ *Bryan E. Schmid*
Bryan E. Schmid, #41873
Senior Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7032 (Office)
(719) 258-0375 (Mobile)

Email: bryanschmid@elpasoco.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will serve a copy on all CM/ECF participants as follows:

Sibylle M. Clark, Esq.
Jason C. Kennedy, Esq.
Montgomery Little & Soran, PC
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Telephone: (303) 773-8100
Fax: (303) 220-0412
sclark@montgomerylittle.com
jkennedy@montgomerylittle.com

*Attorneys for Andrew Thomas Scott*

/s/ ________________________