**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-02011-NYW-KAS

ANDREW THOMAS SCOTT,

Plaintiff,

v.

MICHAEL ALLEN, individually and in his official capacity as
The District Attorney for the 4th Judicial District of Colorado,

Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF 119]**

---

Defendant, District Attorney Michael Allen ("DA Allen"), by and through the Office of the County Attorney of El Paso County, Colorado submits his Response to Plaintiff's Motion for Summary Judgment ("PMSJ") and as grounds in support thereof, DA Allen states as follows:

## I. INTRODUCTION

Plaintiff's First Amended Complaint[1] contains two claims for relief seeking: (1) a declaration that C.R.S. § 18-9-313(2.7) (also referred to as "the Statute") is unconstitutional on its face as it proscribes online publication of a protected persons personal information which amounts to a content-based restriction on his First Amendment right to free speech (ECF 35, p. 18-19, ¶¶94-102); and (2) a declaration that C.R.S. § 18-9-313(2.7) is unconstitutional as applied

[1] *See* Andrew Thomas Scott's First Amended Complaint, ECF 35, filed January 13, 2022 (hereinafter ECF 35, p. _____, ¶_____).

to publication of the video, the Affidavit of Service and the personal information for Trooper Hiller and his wife. (ECF 35, p. 19-20, ¶¶103-108). The pertinent portion of the statute challenged by Plaintiff states:

> It is unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family if the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

C.R.S. § 18-9-313(2.7). On September 15, 2023, Plaintiff and DA Allen filed cross motions for summary judgment, each alleging their entitlement to summary judgment on the facts of the case. *See* PMSJ [ECF 119] and Defendant's Motion for Summary Judgment ("DMSJ") [ECF 121]. Defendant hereby responds to the PMSJ.

## II. STATEMENT OF FACTS

### A. Plaintiff's "Undisputed Facts":

1. Defendant does not dispute Plaintiff's Undisputed Facts ("PUF") 1 through 7.

2. PUF 8 makes a legal conclusion regarding the legality of the service of the subpoena by Mr. Scott by taping it to the front door of Trooper Hiller's residence. Such a legal conclusion does not constitute an "Undisputed Fact" and Defendant objects to its characterization as such.

3. Defendant does not dispute PUF 9 and 10.

4. PUF 11 and 12 contain assertions by Plaintiff for which he provides no reference other than to his own self-serving statements in his First Amended Complaint ("FAC") [ECF 35]. Given Plaintiff's lack of factual support or evidence regarding the assertions made, Defendant is unable to agree that the "facts" contained in PUF 11 and 12 are undisputed.

5. Defendant does not dispute PUF 13 and 14 as the emails speak for themselves, however, it should be noted for the record that Trooper Hiller's email actually appears on page 5 of Exhibit 2 rather than page 6 as indicated in PMSJ and Mr. Scott's email appears on page 6 rather than page 7 as indicated in the PMSJ.

6. Defendant does not dispute PUF 15 through 28.

7. PUF 29 through 31 detail things Mr. Scott "wishes" or "intends" to do but has not yet done. While Defendant cannot dispute that Plaintiff wishes or intends to do those things Defendant does challenge the propriety of Plaintiff following through on his stated wishes and intentions.

**B. Defendant's Statement of Facts:**

8. Trooper Hiller is a "protected person" as defined in C.R.S. § 18-9-313(1)(n). *See also* FAC, p. 7, ¶11.

9. Trooper Hiller's wife shares the same protected person status as Trooper Hiller pursuant to C.R.S. § 18-9-313(2.7). *See also* FAC, p. 7, ¶12.

10. On March 17, 2021, at approximately 8:44 a.m., Mr. Scott reported to Trooper Hiller's residence to serve a subpoena. FAC, p. 9, ¶31.

11. Trooper Hiller's wife answered the door and had a discussion with Mr. Scott regarding the subpoena he was there to serve on her husband. Trooper Hiller's wife advised Mr. Scott that Trooper Hiller was sleeping but she would check with him and come back. She then closed the door while Mr. Scott waited outside. FAC, p. 9, ¶32.

12. Approximately one minute later Trooper Hiller's wife returned to the front door and had a subsequent discussion with Mr. Scott relating to the subpoena. Trooper Hiller's wife then closed the door again while Mr. Scott waited outside. FAC, p. 9, ¶33.

13. After several minutes of waiting Mr. Scott loudly knocked on the front door but no one answered the door. FAC, p. 10, ¶37.

14. Mr. Scott then taped the subpoena he was there to serve to the front door of Trooper Hiller's home. FAC, p. 10, ¶38.

15. During his service of the subpoena at Trooper Hiller's residence Mr. Scott wore a body camera that preserved the events of that day and time on video tape. FAC, p. 10, ¶41.

16. Later that same day (March 17, 2021), Mr. Scott completed an Affidavit of Service for the subpoena he served on Trooper Hiller by posting it to the front door after Trooper Hiller refused to come to the door to receive the subpoena. Mr. Scott Affidavit of Service contained "personal information" (as that term is defined in C.R.S. § 18-9-313(1)(l)) of Trooper Hiller and his wife. FAC, 1p. 11, ¶¶44-45.

17. Mr. Scott sent a copy of the Affidavit of Service containing the personal information of Trooper Hiller and the wife to Trooper Hiller and indicated that he was going to file the Affidavit of Service with the Court. FAN, p. 11, ¶47.

18. Trooper Hiller made statements that Mr. Scott "deliberately and intentionally" included personal information for he and his wife in the Affidavit of Service because the criminals will see it. FAC, p. 15, ¶67.

19. Trooper Hiller accused Mr. Scott of "intentionally and deliberately jeopardize[ing] [his] safety along with [his] family's safety." FAC, p. 15, ¶68.

20. Mr. Scott stated his intention to publish on the internet a detailed, unredacted, and truthful report of his experience with Trooper Hiller and to inform others of his opinion of Trooper Hiller. FAC, p. 17, ¶85.

21. Mr. Scott stated his intention to post online the video recorded by his body camera, which depicts Trooper Hiller's home and vehicles and further depicts Mr. Scott's contact with Trooper Hiller's wife. FAC, p. 17, ¶86.

22. Mr. Scott stated his intention to publish online the Affidavit of Service which contains Trooper Hiller's personal information as well as the personal information about Tropper Hiller's wife. FAC, p. 17, ¶87.

23. Mr. Scott fears arrest and prosecution under C.R.S. § 18-9-313(2.7) if he publishes the video and the Affidavit of Service online. FAC, p. 17, ¶89.

## III. STANDARD OF REVIEW

Under Colorado law, statutes are presumed to comport with constitutional standards. *People v. McCullough*, 6 P.3d 774, 779 (Colo., 2000). "[A] defendant has the burden of establishing the unconstitutionality of a statute, as applied, beyond a reasonable doubt." *People v. Gutierrez*, 622 P.2d 547, 555 (Colo., 1981) accord *People v. Moore*, 562 P.2d 749, 751, 193 Colo. 81, 84 (Colo. 1977) ("It is a fundamental and frequently articulated rule that a statute is presumed to be constitutional, and one who attacks it has the burden to prove it unconstitutional beyond a reasonable doubt."). "A statute that is unconstitutionally applied may, nonetheless, be facially valid if there are conceivable circumstances in which it can be constitutionally applied." *People v. Perez–Hernandez*, 348 P.3d 451, 455–56 (Colo.App., 2013); *Independence Inst. v. Coffman*, 209 P.3d 1130, 1136 (Colo.App.2008) ("As-applied constitutional challenges attempt

to invalidate a law only in the circumstances in which a party has acted or proposes to act; thus, a law that is held invalid as applied is not rendered completely inoperative.”).

“A party challenging the facial validity of a statute must prove that it is unconstitutional beyond a reasonable doubt.” *Perez-Hernandez*, 348 P.3d at 456 citing *People v. Vasquez,* 84 P.3d 1019, 1021–22 (Colo., 2004). “‘A statute is facially unconstitutional only if no conceivable set of circumstances exist under which it may be applied in a constitutionally permissible manner.’” *Id.* at 456 quoting *People v. Montour*, 157 P.3d 489, 499 (Colo., 2007). “[C]ourts should not seek to discover means to hold a statute unconstitutional.” *Moore*, 562 P.2d at 751.

## V. ARGUMENT

As an initial matter, the Defendant incorporates the argument contained within his Motion for Summary Judgment (“DMSJ”) [ECF 121] as if fully set forth herein as such argument is responsive to the argument posited by Plaintiff in this PMSJ.

Plaintiff argues that the “the First Amendment protects speech related to police officers” and submits several cases from outside the 10th Circuit Court of Appeals’ jurisdiction and this Court’s jurisdiction with such cases having no precedential value to the issue before this Court or the argument presented by Plaintiff. PMSJ [ECF 119], p. 6-7. Plaintiff presents the cases for the proposition that “[t]he issue of police accountability was ‘of legitimate public interest,’ and the ‘publication of truthful personal information about police officers is linked’ to that interest ‘through aiding in achieving service of process, researching criminal history of officers, organizing lawful pickets, and other peaceful and lawful forms of civic involvement that publicize the issue.’” PMSJ, p. 7.

Despite Mr. Scott's assertion that he "seeks to engage in precise [*sic*] that kind of speech" nothing is further from the truth. Mr. Scott's stated purpose for publication of the personal information of Trooper Hiller and his wife, i.e., to reveal Trooper Hiller's "avoidance of service of process and his vindictive falsehoods," is not for the furtherance of a "legitimate public interest" or a "matter of public significance" as described by the cited case law but instead serves the sole interest of Mr. Scott. Mr. Scott conflates his claim that the Statute is facially unconstitutional, which renders the Statute unconstitutional regardless of the factual circumstances at issue and his claim that the statute is unconstitutional as applied to him, which is specific to the facts and circumstances of this case only. Despite Mr. Scott's desire to combine the arguments, each claim requires a separate argument because each claim is subject to different standards for determining the constitutionality of the Statute.

**A. C.R.S. § 18-9-313(2.7) is Not Unconstitutional on its Face as the Statute is Supported by a Compelling State Interest that is Narrowly Drawn to Achieve that Interest in the Least Restrictive Manner Possible.**

Laws that impinge on constitutionally protected personal rights, such as the First Amendment right to the freedom of speech, are subject to strict scrutiny and will be sustained only if they are narrowly tailored to serve a compelling state interest. *Students for Concealed Carry on Campus, LLC v. Regents of University of Colorado* ("*Students for Concealed Carry*"), 280 P.3d 18, 28 (Colo. App. 2010) citing *Mayo v. Nat'l Farmers Union Prop. & Cas. Co.*, 833 P.2d 54, 58 (Colo. 1992) (strict scrutiny applies to fundamental rights and suspect classifications); *see also Wisconsin v. Yoder,* 406 U.S. 205, 214 (1972) (When a statute in exercise of the police power impinges upon fundamental rights, the court examining the statute must employ a strict scrutiny test requiring a compelling state interest and a showing that no less

restrictive alternatives are reasonably available.); *City of Lakewood v. Pillow*, 501 P.2d 744, 745 (Colo. 1972) ("A governmental purpose to control or prevent certain activities, which may be constitutionally subject to ... regulation under the police power, may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. Even though the governmental purpose may be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."). This is "the most exacting" standard of review and places "the burden on the government to show that the statute is supported by a compelling state interest and that it is narrowly drawn to achieve that interest in the least restrictive manner possible." *Students for Concealed Carry*, 280 P.3d at 27–28.

In the case of C.R.S. §18-9-313(2.7), the state has a compelling interest in preventing disclosure of personally identifying information of peace officers and the other categories of protected persons listed within §18-9-313(1)(n) to protect said persons from, among other things, actions of abuse, threats of harm, harassment, intimidation, bullying, physical attacks, stalking, emotional distress, online targeting, and violent protests when the statutorily protected persons are particularly susceptible to such things because of the nature of the public services they provide. The restrictions imposed by the statute on the free speech right of the person making the information available on the internet is narrowly tailored in that it applies only when "the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat." C.R.S. §18-9-313(2.7).

Mr. Scott argues that "the Statute lacks a compelling interest in shielding the identity of public servants from the public" because "the First Amendment protects, at its core, speech about our public servants, including identification of peace officers." PMSJ, p. 8. Defendant does not dispute that there is no compelling state interest in precluding the "identification of peace officers;" the public is certainly entitled to know the names of those protecting them. However, Defendant asserts that there does indeed exist a compelling state interest in precluding publication of the personal information, such as the home address, home telephone number, personal mobile telephone number, pager number, personal e-mail address, a personal photograph, directions to the person's home, or a photograph of the person's home or vehicle of a protected person for the reasons previously stated. The Colorado statute specifically proscribes the disclosure of a protected person's personal information when the disclosing person "*knows or reasonably should know of an imminent and serious threat*" to the protected person. C.R.S. §18-9-313(2.7).

Mr. Scott's argues the Colorado Statute is unconstitutional by comparing it to a Florida statute which contains completely different language and does not require knowledge of an imminent and serious threat.[2] Mr. Scott's argues that "[t]he Statute does not curtail true threats directed to the public servant" and cites to the *Brayshaw* case for the proposition that "Simply publishing an officer's phone number, address, and e-mail address is not in itself a threat or serious expression of an intent to commit an unlawful act of violence." PMSJ, p. 9 citing *Brayshaw*, 709 F.Supp.2d at 1248.

---

[2] See Plaintiff's reliance on *Brayshaw v. City of Tallahassee, Fla*., 709 F. Supp. 2d 1244, 1248 (N.D. Fla. 2010). PMSJ, p. 1 and 7-9.

Mr. Scott's reliance upon the "true threat" argument from *Brayshaw* is misplaced because C.R.S. §18-9-313(2.7) does not criminalize the making of a "true threat" (Colorado has other statutes which criminalize that conduct) by the person publishing the personal information of a protected person, rather it criminalizes the publication of protected person's personal information when the publisher "*knows or reasonably should know of an imminent and serious threat*" to the protected person regardless of whether the imminent and serious threat is made by the publisher or some third-person. In other words, when a person publishes the personal information, as defined by C.R.S. §18-9-313(1)(n), of a protected person *in the face of a known imminent and serious threat* against that protected person, there is no First Amendment protection for that speech. *See e.g. Counterman v. Colorado*, 600 U.S. 66, 69 (2023) ("True threats of violence are outside the bounds of First Amendment protection and punishable as crimes."); *People v. Chase*, 411 P.3d 740, 754 (Colo. App. 2013) ("Some categories of speech, such as 'true threats,' are unprotected by the First Amendment and, thus, may be regulated by the government.); *People In Interest of R.D.*, 468 P.3d 9, 12–13 (Colo.App., 2016) ("Some categories of speech, such as true threats and fighting words, are unprotected by the First Amendment and, thus, may be regulated by the government."). Thus, the Statute criminalizes the publication of a protected person's personal information when it is published without due regard to a substantial risk (an imminent and serious threat) that the communication of the information would be viewed as threatening. *Counterman*, 600 U.S. at 69 ("The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications

would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another.”).

Since there are some circumstances where the Statute can be constitutionally applied, the Statute cannot be unconstitutional on its face. *Perez-Hernandez*, 348 P.3d at 456 (“‘A statute is facially unconstitutional only if no conceivable set of circumstances exist under which it may be applied in a constitutionally permissible manner.’”). Plaintiff has not proved that the Statute is unconstitutional beyond a reasonable doubt and therefore, Mr. Scott’s request for a declaration C.R.S. § 18-9-313(2.7) is unconstitutional on its face must be denied. *Perez-Hernandez*, 348 P.3d at 456 citing *People v. Vasquez*, 84 P.3d at 1021–22; *People v. Boles*, 280 P.3d 55, 59 (Colo. App., 2011) (Because statutes are presumed to be constitutional, the party challenging the facial constitutionality of a statute has the burden of showing the statute is unconstitutional beyond a reasonable doubt.).

**B. C.R.S. § 18-9-313(2.7) is Not Unconstitutional in its Application to Mr. Scott.**

“Generally, with an as-applied challenge, the claimant is arguing that the provision at issue is unconstitutional not on its face, but “under the circumstances in which the [claimant] has acted or proposes to act.” *Developmental Pathways v. Ritter*, 178 P.3d 524, 533–34 (Colo., 2008) citing *Sanger v. Dennis*, 148 P.3d 404, 410 (Colo. App. 2006). “The practical effect of holding a statute unconstitutional as applied is to prevent its future application in a similar context, but not to render it utterly inoperative.” *Developmental Pathways*, 178 P.3d at 534 citing *Sanger* 148 P.3d at 410 quoting *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting)); *see also City of Chicago v. Morales*, 527 U.S. 41, 78 n.1 (1999) (An as-applied challenge, by contrast, asserts “that even if the statute [is] not unconstitutional in

all its applications it [is] at least unconstitutional in its particular application to" the plaintiff.). "In order for Plaintiffs to obtain a declaration that the Amendment is unconstitutional as applied, there must be an actual application or at least a reasonable possibility of enforcement or threat of enforcement." *Developmental Pathways*, 178 P.3d at 534 citing *Hill v. Thomas*, 973 P.2d 1246, 1248 n. 2 (Colo.1999) (finding that "as the statute had not yet been enforced, the trial court correctly ruled that the challenge was facial only"). "Courts have repeatedly found that where a statute is not yet in effect, or where there has yet to be any enforcement of its provisions, an as-applied challenge to the statute is not ripe for review." *Id.* at 534. Statutes are presumed to be constitutional, so "to succeed on an as-applied challenge, the challenger must establish the unconstitutionality of the statute, as applied to [them], beyond a reasonable doubt." *Woo v. Baez*, 522 P.3d 739, 747 (Colo. App. 2022).

Here, Plaintiff posits that he:

> … wishes to publicly publish, in the future, the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet to publicly defend himself against Trooper Hillers' accusations and to hold him to public account;
>
> … intends to develop a website that can assist the citizens of Colorado in locating law enforcement officers for the purpose of serving process or subpoenas upon the law enforcement officers, potentially including publication of personal identifying information. Such a tool will assist citizens in exercising their right to petition the enforcement officers who may make allegations against them; and
>
> … intends to develop a website where members of the public can post information about law enforcement officers as may be necessary and appropriate to holding them to account for irresponsible or inappropriate conduct, including publication of their personal identifying information.

PMSJ, p. 5-6, ¶¶29-31. Mr. Scott lists only actions that he wishes and intends to do and therefore, there has yet to be any enforcement of its provisions so his as-applied challenge to the Statute is not ripe. *Developmental Pathways,* 178 P.3d at 534. "Under the doctrine of ripeness, a claim must be real and immediate." *Id.* at 534 citing *Board of Directors, Metro Wastewater Reclamation Dist. V. National Union Fire Ins. Co of Pittsburgh*, PA, 105 P.3d 653, 656 (Colo. 2005). With this requirement in mind, this Court must "refuse to consider uncertain or contingent future matters that suppose speculative injury that may never occur." *Id.*

Mr. Scott's challenge to the constitutionality of the Statute in its application to him is not yet ripe and therefore, his request for a declaration that C.R.S. § 18-9-313(2.7) is unconstitutional in its application to him must be denied. Additionally, Mr. Scott has failed to establish the unconstitutionality of the statute, as applied to him, beyond a reasonable doubt so his as-applied challenge must fail. *Woo*, 522 P.3d at 747.

## CONCLUSION

For all of the foregoing reasons, Plaintiff has failed to prove that C.R.S. § 18-9-313(2.7) is unconstitutional either on its face or in its application to the facts of this case.

**WHEREFORE**, Defendant, DA Allen, respectfully requests this Honorable Court deny Mr. Scott's Motion for Summary Judgment; dismiss Plaintiff's First Amended Complaint with prejudice; and grant him his reasonable attorney fees and costs and any other relief the Court deems appropriate under the law.

Respectfully submitted this 27th day of October 2023.

By: s/ *Bryan E. Schmid*
Bryan E. Schmid, #41873
Senior Assistant County Attorney
El Paso County Attorney's Office

200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7032 (Office)
(719) 258-0375 (Mobile)

Email: bryanschmid@elpasoco.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will serve a copy on all CM/ECF participants as follows:

Sibylle M. Clark, Esq.
Jason C. Kennedy, Esq.
Montgomery Little & Soran, PC
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Telephone: (303) 773-8100
Fax: (303) 220-0412
sclark@montgomerylittle.com
jkennedy@montgomerylittle.com

*Attorneys for Andrew Thomas Scott*

/s/ Tara Zemaitaitis
Paralegal