**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02011-NYW-KAS

ANDREW THOMAS SCOTT,

Plaintiff,

v.

MICHAEL ALLEN, in his official capacity as the
District Attorney for the 4th Judicial District of Colorado,

Defendant.

---

**ANDREW THOMAS SCOTT'S REPLY TO**
**MICHAEL ALLEN'S RESPONSE TO MS. SCOTT'S MOTION FOR SUMMARY JUDGMENT**

---

Andrew Thomas Scott (Mr. Scott), by and through his attorneys at Montgomery Little & Soran, PC, submits this reply to Michael Allen's (Mr. Allen's) Response to Ms. Scott's Motion for Summary Judgment, ECF No. 124.

## MR. SCOTT'S UNDISPUTED FACTS

1. Mr. Allen does not dispute the fact that Mr. Scott is a process server and the owner of a company in the business of serving process. ECF No. 35, ¶¶ 13-15; ECF No. 124, p. 2 at ¶ 1.

2. Mr. Allen does not dispute the fact that Mr. Scott is also a private investigator, licensed in Colorado. ECF No. 35, ¶ 70; ECF No. 124, p. 2 at ¶ 1.

3. Mr. Allen does not dispute the fact that, on March 12, 2021, Mr. Scott was asked, by attorney Joseph C. Maher's office, to serve a subpoena from the Colorado Department of Revenue upon Trooper Hiller. ECF No. 35, ¶¶ 21-22; Exhibit 1; ECF No. 124, p. 2 at ¶ 1.

4. Mr. Allen does not dispute the fact that the Subpoena compelled Trooper Hiller to attend a hearing, to be held virtually, on March 24, 2021. Exhibit 1; ECF No. 124, p. 2 at ¶ 1.

5. Mr. Allen does not dispute the fact that From March 12, 2021, through March 16, 2021, Mr. Scott attempted to coordinate with Trooper Hiller a time and place for service, but Trooper Hiller failed or refused to do so. ECF No. 35, ¶¶ 23-28, 30; Exhibit 2 (written correspondence between Mr. Scott and Trooper Hiller); ECF No. 124, p. 2 at ¶ 1.

6. Mr. Allen does not dispute the fact that, on March 17, 2021, When Mr. Scott arrived at Trooper Hiller's home, his wife answered the door and tried to get Trooper Hiller, but he refused to come to the door to receive the Subpoena. ECF No. 35, ¶¶ 32-37; ECF No. 124, p. 2 at ¶ 1.

7. Mr. Allen does not dispute the fact that Mr. Scott taped the Subpoena to Trooper Hiller's front door. ECF No. 35, ¶ 38; ECF No. 124, p. 2 at ¶ 1.

8. On March 17, 2021, Mr. Scott lawfully served a subpoena, to Trooper Charles David Hiller (Trooper Hiller). ECF No 35, ¶¶ 31-44. Mr. Allen states that the "legal conclusion regarding the legality of the service of the subpoena by Mr. Scott" is not a matter of fact. ECF No. 124, p. 2 at ¶ 2. Mr. Allen makes no argument that the service of the Subpoena was unlawful.

9. Mr. Allen does not dispute the fact that Mr. Scott completed an affidavit of service by refusal (hereinafter, the Affidavit of Service), in which he recounted his efforts to serve

Trooper Hiller and which included Trooper Hiller's full name, date of birth, address, phone number, vehicle description and license place, and his wife's full name and date of birth. ECF No. 35, ¶ 44; Exhibit 2, p. 7; ECF No. 124, p. 2 at ¶ 3.

10. Mr. Allen does not dispute the fact that Mr. Scott wore a body camera on March 17, 2021, while attempting to serve the Subpoena upon Trooper Hiller, which made a true and accurate video recording of Mr. Scott's efforts to effectuate service, including but not limited to the First Encounter and the Second Encounter with Trooper Hiller's wife (hereinafter, the Video). ECF No. 35, ¶ 41; ECF No. 124, p. 2 at ¶ 3.

11. Mr. Allen says that he "is unable to agree" that Trooper Hiller expressly asserted that Mr. Scott's Affidavit of Service contained "lies" and expressly asserted that it posed a threat to his and his family's safety simply because it contained personal identifying information. ECF No. 35, ¶¶ 51- 53; *cf*. ECF. No. 119, p. 3 at ¶ 11; *with* ECF No. 124, p. 2 at ¶ 4. Yet, Mr. Allen agrees that "Trooper Hiller accused Mr. Scott of 'intentionally and deliberately jeopardize[ing] [his] safety along with [his] family's safety'" by "'deliberately and intentionally' included personal information for he and his wife in the Affidavit of Service for the criminals to see it. ECF No. 124, p. 4 at ¶¶ 18-19 (citing EFC No. 35, p. 15 at ¶¶ 67-68). Trooper Hiller's complaint against Mr. Scott six times asserts that Mr. Scott's Affidavit contains "lies," ECF No. 119-5, pp. 3-6, and Mr. Allen concedes that Trooper Hiller made that complaint, ECF No. 119, p. 4 at ¶ 16; ECF No. 124, p. 3 at ¶ 6; ECF No. 124, p. 4 at ¶ 18-19.

12. Mr. Allen says that he "is unable to agree" that Trooper Hiller implicitly asserted a violation of the Statute. *Cf*. ECF. No. 119, p. 3 at ¶ 12; *with* ECF No. 124, p. 2 at ¶ 4.

Yet, Mr. Allen agrees that "Trooper Hiller accused Mr. Scott of 'intentionally and deliberately jeopardize[ing] [his] safety along with [his] family's safety.'" ECF No. 124, p. 4 at ¶ 19 (citing EFC No. 35, p. 15 at ¶ 68).

13. Mr. Allen does not dispute the fact that, moments after Mr. Scott left Trooper Hiller's residence, Trooper Hiller sent an email to Mr. Scott, on March 17, 2021, directing that Mr. Scott travel to Divide, Colorado that evening to complete service. ECF No. 35, ¶ 43; Exhibit 2, p. 5; ECF No. 124, p. 2 at ¶ 5.

14. Mr. Allen does not dispute the fact that Mr. Scott responded to that email and attached the Affidavit of Service, indicating that service was already completed. ECF No. 35, ¶ 47; Exhibit 2, p. 6-7; ECF No. 124, p. 2 at ¶ 5.

15. Mr. Allen does not dispute the fact that, later on March 17, 2021, Mr. Maher agreed, in writing, to redact Trooper Hiller's personal identifying information from the Affidavit of Service "before filing" it with the Department of Revenue. Exhibit 3, p. 3; ECF No. 124, p. 3 at ¶ 6.

16. Mr. Allen does not dispute the fact that, on or before March 23, 2021, Trooper Hiller filed a complaint against Mr. Scott with the Colorado Department of Regulatory Agencies, Office of Private Investigator Licensure, in which he asserted that the affidavit made his personal information public. ECF No. 35, ¶¶ 49, 70; Exhibit 4; ECF No. 124, p. 3 at ¶ 6.

17. Mr. Allen does not dispute the fact that Mr. Scott immediately notified, on March 23, 2021, Mr. Maher's office of Trooper Hiller's complaint, in advance of the hearing before

the Department of Review on March 24, 2021. ECF No. Exhibit 5; ECF No. 124, p. 3 at ¶ 6.

18. Mr. Allen does not dispute the fact that Trooper Hiller also filed another version of his complaint with Mr. Maher's office earlier on March 23, 2021. Exhibit 3 (Trooper Hiller's email to Mr. Maher); Exhibit 6 (notice from Mr. Maher's office to Mr. Scott); ECF No. 124, p. 3 at ¶ 6.

19. Mr. Allen does not dispute the fact that, on April 7, 2021, Trooper Hiller filed a version of his complaint with the Process Servers Association of Colorado. Exhibit 9; ECF No. 124, p. 3 at ¶ 6.

20. Mr. Allen does not dispute the fact that, in his complaints, Trooper Hiller asserted that Mr. Scott "deliberately and intentionally added [] personal information about me and my family to an affidavit" and that this was done "intentionally and deliberately [to] jeopardize[] my safety, along with my family's safety." Exhibits 4, 6, and 9; ECF No. 124, p. 3 at ¶ 6.

21. Mr. Allen does not dispute the fact that, on April 1, 2021, Mr. Scott filed a response to Trooper Hiller's complaint with the Office of Private Investigator Licensure, Exhibit 7; ECF No. 124, p. 3 at ¶ 6.

22. Mr. Allen does not dispute the fact that Mr. Scott shared his response with Mr. Maher's office on April 1, 2021, Exhibit 8; ECF No. 124, p. 3 at ¶ 6.

23. Mr. Allen does not dispute the fact that Mr. Scott shared his response with the Process Servers Association of Colorado on April 7, 2021, Exhibit 10; ECF No. 124, p. 3 at ¶ 6.

24. Mr. Allen does not dispute the fact that, on May 19, 2021, the Office of Private Investigator Licensure dismissed Trooper Hiller's complaint due to "insufficient grounds to warrant the commencement of formal disciplinary proceeding." Exhibit 12; ECF No. 124, p. 3 at ¶ 6.

25. Mr. Allen does not dispute the fact that Mr. Maher's office had indicated that it was "not upset at all with how [Mr. Scott] handled this service." Exhibit 5, p. 3; ECF No. 124, p. 3 at ¶ 6.

26. Mr. Allen does not dispute the fact that, on April 27, 2021, the Process Servers Association of Colorado expelled Mr. Scott from membership in the association in view of Trooper Hiller implicit assertion that Mr. Scott violated the Statute. Exhibit 11; ECF No. 124, p. 3 at ¶ 6.

27. The Association explicitly found that Mr. Scott violated "the Colorado Revised Statute regarding disclosure of law enforcement personal information" and attached the Statute. ECF No. Exhibit 11, p. 1; ECF No. 124, p. 3 at ¶ 6.

28. Mr. Allen does not dispute the fact that Mr. Scott verified the forgoing facts. Affidavit of Andrew Thomas Scott, ¶¶ 5, 10-11, 13-21; ECF No. 124, p. 3 at ¶ 6.

29. Mr. Allen does not dispute the fact that Mr. Scott wishes to publicly publish, in the future, the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet to publicly defend himself against Trooper Hillers' accusations and to hold him to public account. Affidavit of Andrew Thomas Scott, ¶ 8 ECF No. 124, p. 3 at ¶ 7.

30. Mr. Allen does not dispute the fact that Mr. Scott intends to develop a website that can assist the citizens of Colorado in locating law enforcement officers for the purpose of serving process or subpoenas upon the law enforcement officers, potentially including publication of personal identifying information. Such a tool will assist citizens in exercising their right to petition the government for redress and their right to question law enforcement officers who may make allegations against them. Affidavit of Andrew Thomas Scott, ¶ 27; ECF No. 124, p. 3 at ¶ 7.

31. Mr. Allen does not dispute the fact that Mr. Scott intends to develop a website where members of the public can post information about law enforcement officers as may be necessary and appropriate to holding them to account for irresponsible or inappropriate conduct, including publication of their personal identifying information. Affidavit of Andrew Thomas Scott, ¶ 28 ECF No. 124, p. 3 at ¶ 7.

**MR. ALLEN'S STATEMENT OF FACTS**

8. Admitted.

9. Denied. Trooper Hiller's wife is not a protected person under the Statute. C.R.S. § 18-9-313(1)(n) (Westlaw, October 24, 2023) ("'Protected person' means a human services worker, a public health worker, a judge, a peace officer, a prosecutor, a public defender, or a public safety worker."); *but see* C.R.S. § 18-9-313(2.7) (Westlaw, October 24, 2023) (restricting speech in the interest of "the protected person's immediate family.")

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Mr. Scott admits that he sent a copy of the Affidavit of Service to Trooper Hiller. ECF No. 35, ¶ 47; ECF No. 119-3, p. 6. Mr. Scott denies indicating that he was going to file the Affidavit of Service "with the Court." ECF No. 124, p. at ¶ 17. The underlying subpoena was issued by the Colorado Department of Revenue, not by a court. ECF No. 119-2. Mr. Scott stated that the Affidavit of Service would be filed "in this case." ECF No. 35, ¶ 47; ECF No. 119-3, p. 6. A filing with the Department of Revenue is not published on the internet.

18. Admitted. *See* ECF No. 119-5, p. 8.

19. Admitted. *See* ECF No. 119-5, p. 8.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

## STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well known. Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making

this determination, [courts] view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023).

Mr. Allen's motion suggests that the Court should apply a principle of Colorado constitutional jurisprudence presuming state statutes are constitutional and placing the burden on the challenger. However, that principle is foreign to federal constitutional jurisprudence. *Cf. People v. Counterman*, 2021 COA 97, ¶ 32 ("We presume that a statute is constitutional, and the party challenging the statute has the burden of proving unconstitutionality beyond a reasonable doubt") (internal quotation omitted) *with Counterman v. Colorado*, 143 S. Ct. 644, 214 L. Ed. 2d 382 (2023) (reversing without such a presumption and without such a standard of proof).

Rather, "the Constitution demands that content-based restrictions on speech be presumed invalid, . . . and that the Government bear the burden of showing their constitutionality . . . ." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 660 (2004) (internal citations omitted). "The heavy burden of demonstrating that a content-based restriction is 'the least restrictive means among available, effective alternatives' lies with the government." *Peck v. McCann*, 43 F.4th 1116, 1135 (10th Cir. 2022) (quoting *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 665–66 (2004)). "[T]he Government bears the *burden of proof* on the ultimate question of [a law's] constitutionality. *Ashcroft*, 542 U.S. at 666 (emphasis added).

## ARGUMENT

### Protected Speech

Mr. Allen erroneously suggests that Mr. Scott's speech about Tropper Hiler is not constitutionally protected because the speech regard the Trooper's "avoidance of service of process and his vindictive falsehoods" in dealing with Mr. Scott rather than a matter of "public

significance." ECF 124, p. 6. The Video and Affidavit of Service would not only illustrate Ms. Scott's good faith efforts and Trooper Hiller's refusal to accept service of the Subpoena. In his Complaint, Tropper Hiller stated that Mr. Scott "intimidated his wife, and had her thinking I had committed some type of crime and was now in trouble." ECF 119-5, 4. The Video records precisely what was said to Mrs. Hiller. The entire criminal justice system assumes that peace officers maintain absolute fidelity to the truth. The question of whether this particular peace officer violated the trust bestowed upon him by the People of the State of Colorado is absolutely a matter of public concern. Whether two citizens arrange to lawfully protest outside Trooper Hiller's home or a hundred march on the Capital to protest, the protections of the First Amendment are the same. So too, Trooper Hiller's refusal to cooperate informs the public about the need to establish institutional processes for service upon peace officers.

**Facial Challenge**

Mr. Allen suggests that the Statute is supported by the following state interest:

> to protect said persons from, among other things, actions of abuse, threats of harm, harassment, intimidation, bullying, physical attacks, stalking, emotional distress, online targeting, and violent protests when the statutorily protected persons are particularly susceptible to such things because of the nature of the public services they provide.

ECF No. 124, p. 7. The Statute is not narrowly tailored to that purported interest. The state can, and does, criminalize the ills identified by Mr. Allen. *Counterman v. Colorado*, 143 S. Ct. 2106, 2132 (2023) (there are few First Amendment "concerns with stalking laws that punish repeated, targeted, unwanted conduct and accompanying speech") (Sotomayor, J., concurring). This Statute is not narrowly tailored to that purported interest. Mr. Allen concedes that "C.R.S. §18-9-313(2.7) does not criminalize the making of a "true threat" ***(Colorado has other statutes which criminalize that conduct)***." ECF 124, p 9. Mr. Allen's concession that Colorado can and does

protect it citizens from the true threats at which he says the Statute is aimed, without this content-based restriction of speech, is fatal to the constitutionality of the Statute.

Mr. Allen has presented no evidence to substantiate his assertion that protected persons under the Statute are "particularly susceptible" and thus in need of additional protection by this content-based restriction of speech beyond the laws that protect all Colorado's citizen from harmful conduct. It is his burden to present such evidence. *Ashcroft*, 542 U.S. at 666 (the "Government bears the burden of proof"); *Peck*, 43 F.4th at 1137 (the Government must prove the constitutionality of a content-based restriction of speech with "affirmative evidence"). Mr. Allen's argument "is not proof; it is merely speculation, which is not enough to meet [his] burden under strict scrutiny." *Peck*, 43 F.4th at 1136.

Next, Mr. Allen suggests that the Statute is constitutional because there is "no First Amendment protection" when speech made "in the face of a known imminent and serious threat." ECF 124, p 9 (emphasis omitted). While Mr. Allen concedes that the Statute is not targeted at true threats, he spends an entire page citing cases holding that true threats are beyond the protections of the first amendment, and he offers no analysis to bridge the gap. ECF 124, p 9. Mr. Allen's simplistic logic—that a "known" and "substantial risk" of harm renders speech unprotected—does not pass muster. Fighting words are "those which by their very utterance *inflict injury* or tend to *incite* an immediate breach of the peace. *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769, 86 L. Ed. 1031 (1942). True threats are assessed "based solely on its objective content." *Counterman v. Colorado*, 143 S. Ct. 2106, 2113, (2023). "True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Id*. at 2114. "All the harms that have long made threats

unprotected naturally follow" from the speech itself. *Id.* "'[B]y their very utterance,' true threats 'inflict injury.' *Id.* at 2134 (Barrett, J., dissenting) (quoting *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003)). True threats are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence." *Virginia v. Black*, 538 U.S. 343, 359, (2003). Constitutionally proscribable threats convey "the intent of placing the victim in fear of bodily harm or death." *Id.* at 360. Here, the Statute does not restrict speech that itself causes injury by communicating unlawful violence by the speaker to the listener. It criminalizes the publication of personal identifying information on the internet when another might use that information to inflict harm.

Further, the statute does not restrict speech that incites another to violence. Even "advocacy of the use of force or of law violation" by another is constitutionally protected "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Speech that made lead another to violence (i.e., incitement) is not proscribable "unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115, 216 L. Ed. 2d 775 (2023). By using *mens rea* of knowledge or recklessness, the Statute fails under the jurisprudence of incitement.

Therefore, the statute does not proscribe true threats and does not proscribe incitement, and the content-based restriction of speech is facially unconstitutional.

**As-Applied Challenge**

Mr. Allen argues (yet again by improperly citing state caselaw with the incorrect standards) that Ms. Scott's as-applied challenge is not ripe. The ripeness doctrine "is 'relaxed somewhat'" in First Amendment cases. *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116

(10th Cir. 2008). "[R]ipeness issues focus 'not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention.'" *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022). The two central factors in ripeness inquiries are "the fitness of the issue for judicial resolution" and "the hardship to the parties of withholding judicial consideration." *Peck v. McCann*, 43 F.4th 1116, 1133 (10th Cir. 2022) (quoting *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990)). The test is not "rigid or mechanical," but instead "flexible and often context-specific." *Id.* (quoting Sierra Club, 911 F.2d at 1417). "[R]ipeness inquiries in First Amendment cases often focus on the credibility of the threat of prosecution as an indicator of hardship, as the specter of prosecution can be a hardship in itself because it can chill future speech." *Id.* at 1134. When the question presented "purely legal question" upon undisputed facts, the question is "an ideal fit for judicial review, favoring a conclusion that the case is ripe." *Id.* at 1134.

Here, the Court already determined that Mr. Scott's as demonstrated a credible threat of prosecution. ECF No. 104, p. 13. The material facts to the as-applied challenge are undisputed.

Mr. Allen says that, because there is not yet "any enforcement of its provisions," the "as-applied challenge to the Statute is not ripe." The law is clear that "Article III does not require the plaintiff to risk "an actual arrest, prosecution, or other enforcement action." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1171–72 (10th Cir. 2021), rev'd on other grounds, 600 U.S. 570, 143 S. Ct. 2298, 216 L. Ed. 2d 1131 (2023).

Therefore, the Court should consider the merits of Mr. Scott's as-applied challenge.

## CONCLUSION

For all the forgoing reasons, the Court should grant summary judgment in Mr. Scott's favor and declare that C.R.S. § 18-9-313 (the Statute) is unconstitutional under the First Amendment to the United States' Constitution.

Dated: November 10, 2023.

Respectfully Submitted,

*/s/ Jason C. Kennedy, Esq.*

Jason C. Kennedy, Esq.
Sibylle M. Clark, Esq.
MONTGOMERY LITTLE & SORAN, PC
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Telephone: (303) 773-8100
Fax: (303) 220-0412
jkennedy@montgomerylittle.com
sclark@montgomerylittle.com
*Attorneys for Andrew Thomas Scott*