IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-02011-NYW-KAS

ANDREW THOMAS SCOTT,

    Plaintiff,

v.

MICHAEL ALLEN, in his official capacity as the District Attorney for the 4th Judicial District of Colorado,

    Defendant.

---

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on (1) Andrew Thomas Scott's Motion for Summary Judgment ("Plaintiff's Motion for Summary Judgment"), [Doc. 119], and (2) Defendant's Motion for Summary Judgment, [Doc. 121], both filed on September 15, 2023 (together, "Motions").  Upon review of the Motions and the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of the Motions.  For the following reasons, the Court sua sponte **DISMISSES without prejudice** Plaintiff's Amended Complaint for lack of subject matter jurisdiction because Plaintiff lacks standing.  Accordingly, Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment are **DENIED as moot**.

### BACKGROUND

**I.    Factual Background**

The factual background of this action has been discussed in detail in previous Orders, *see, e.g.*, [Doc. 104 at 2–4], and therefore, the Court recounts only the most

salient factual allegations from the operative Amended Complaint for background purposes.  *See* [Doc. 35].

**Plaintiff's Past Conduct.**   This action arises from the attempted service of a subpoena by Plaintiff Andrew Thomas Scott ("Plaintiff" or "Mr. Scott"), a process server, on Colorado State Patrol Trooper Charles Hiller ("Trooper Hiller").  [*Id.*].  After attempting to coordinate service upon Trooper Hiller, Plaintiff traveled to Trooper Hiller's residence on March 17, 2021.  [*Id.* at ¶ 31].  Plaintiff used a body-worn camera to video record his attempt to serve the subpoena on Trooper Hiller (the "Video").  [*Id.* at ¶¶ 32–37, 41].  After Trooper Hiller refused to come to the door to accept service, Plaintiff taped the subpoena to the door and sent Trooper Hiller a message "in an effort to coax Trooper [Hiller] out of the residence to receive service . . . ."  [*Id.* at ¶ 39].  Trooper Hiller did not come to the door, and instead emailed Plaintiff to coordinate a meeting place to complete service.  [*Id.* at ¶ 43].

Plaintiff subsequently completed an affidavit of service by refusal (the "Affidavit of Service" or "Affidavit"), which reflected Trooper Hiller's full name and date of birth; his phone number; his address; his vehicle and license plate; and his wife's name and date of birth in order to corroborate that service was effective and that the proper party was served.  [*Id.* at ¶ 44].  Plaintiff emailed the affidavit of service to the Colorado Department of Revenue attorney who requested service of the subpoena, Joseph C. Maher.  [*Id.* at ¶ 22; Doc. 88 at 3 (citing [Doc. 74-13 at 2])].  Mr. Maher then agreed to redact Trooper Hiller's personal information from the affidavit of service before sending the served subpoena to the Department of Revenue.  [Doc. 35 at ¶ 79].

On or about March 23, 2021, Trooper Hiller filed an administrative complaint against Plaintiff with the Colorado Department of Regulatory Agencies, Office of Private Investigator Licensure, and submitted a complaint to the Process Servers Association of Colorado ("PSACO"). [*Id.* at ¶¶ 70–73]. Although neither complaint referenced it, Plaintiff contends that these complaints implicitly assert a violation of Colo. Rev. Stat. § 18-9-313(2.7) ("the Statute"), which provides that:

> It is unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family if the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

Colo. Rev. Stat. § 18-9-313(2.7) (2024).[1]  Ultimately, the Office of Private Investigator Licensure dismissed the administrative complaint, but PSACO expelled Plaintiff for violating the PSACO Code of Ethics and the Statute. [Doc. 35 at ¶¶ 81–82].

**The Statute.**  A "protected person" under Colo. Rev. Stat. § 18-9-313 is defined to include the following:

> an educator, a code enforcement officer, a human services worker, a public health worker, a child representative, a health-care worker, a reproductive health-care services worker, an officer or agent of the state bureau of animal protection, an animal control officer, an office of the respondent parents'

---

[1] While § 18-9-313 has been amended several times since this case was initiated, none of the changes impact Plaintiff's claims. *Compare* [Doc. 35 at ¶ 10 (quoting Colo. Rev. Stat. § 18-9-313 (2021))], *with* Colo. Rev. Stat. § 18-9-313 (2024).  In 2023, § 18-9-313 was amended to include a "licensed health-care provider" under the definition of "health-care worker", *id.* § 18-9-313(1)(d), and "[r]eproductive health-care services worker," *id.* § 18-9-313(1)(q.5), under the definition of "protected person," *id.* § 18-9-313(1)(n).  In 2024, firefighters were also added to the list of protected persons under the Statute. *See id.* §§ 18-9-313(1)(c.5) (defining "[f]irefighter"), (n) (including "firefighter" in definition of "protected person").

3

>counsel staff member or contractor, a judge, a peace officer, a prosecutor, a public defender, a public safety worker, or a firefighter.

Colo. Rev. Stat. § 18-9-313(1)(n).[2]  Section 18-9-313 defines "personal information" to include, among other things, a protected person's home address, home telephone number, cell phone number, personal e-mail address, or personal photograph. *Id.* § 18-9-313(1)(*l*).  "Personal information" also includes directions to the home of a protected person and photographs of the home or vehicle of a protected person. *Id.*

Section 18-9-313 also provides a procedure by which protected persons may request that their personal information be removed from the internet.  Pursuant to subsection (2.8), a protected person may request the removal of personal information from records made available on the internet through state or local government officials by submitting a written request to the official(s). *Id.* § 18-9-313(2.8)(a).  The protected person's written request must include three things:  (1) their full name and home address; (2) evidence that they are a protected person; and (3) an "affirmation stating under penalty of perjury" that the requester "has reason to believe that the dissemination of the personal information contained in the records . . . available on the internet poses an imminent and serious threat to the person's safety or the safety of the person's immediate family." *Id.* § 18-9-313(2.8)(b).  A violation of subsection (2.7) is a class 1 misdemeanor. *Id.* § 18-9-313(3).

---

[2] Section 18-9-313 further defines each category of "protected persons." Colo. Rev. Stat. §§ 18-9-313(1)(a)–(b), (d)–(e), (g), (i), (k), (m), (o)–(q).  Most relevant here, a "peace officer" is defined to include a law enforcement officer. *Id.* § 18-9-313(1)(k) (incorporating by reference Colo. Rev. Stat. § 16-2.5-101); *id.* § 16-2.5-101 (defining "peace officer" as synonymous with "law enforcement officer").

4

***Plaintiff's Contemplated Future Conduct.***  For a variety of reasons set forth in greater detail below, Plaintiff seeks to publish the Video and Affidavit of Service to the internet.  [Doc. 119-1 at ¶ 8].  Through publication of the Video and Affidavit of Service, "Mr. Scott wishes to speak to the public at large to identify Trooper Hiller and advocate that Trooper Hiller, who has made vindictive and demonstrably false accusations, is unworthy of the trust confided in him by the people of Colorado." [Doc. 119 at 11].  Plaintiff also intends to develop two websites aimed at holding law enforcement officers accountable by facilitating service of process and information sharing about officers who engage in "irresponsible or inappropriate conduct" ("the Websites").  [*Id.* at ¶¶ 30–31].

## II.   Procedural Background

Plaintiff commenced this action on July 26, 2021, and filed the operative Amended Complaint seeking declaratory relief on January 13, 2022, seeking relief from Trooper Hiller and former defendant Matthew Packard (together, "CSP Defendants") and Defendant District Attorney Michael Allen ("Defendant" or "District Attorney Allen"), in both their individual and official capacities.  [Doc. 1; Doc. 35].  Plaintiff seeks a declaration that the Statute is unconstitutional on its face and asks this Court to determine whether the Statute can constitutionally proscribe him from publicly defending himself because his evidence contains Trooper Hiller's identifying information.  [Doc. 35 at ¶¶ 94, 102, 103–108].  The CSP Defendants and Defendant Allen both sought dismissal of the Amended Complaint by invoking Rule 12(b)(1) of the Federal Rules of Civil Procedure, challenging this Court's subject matter jurisdiction, in their respective Motions to Dismiss.  [Doc. 58; Doc. 71].  The Court granted the CSP Defendants' Motion to Dismiss in its entirety, thereby dismissing the CSP Defendants from this action; and granted in part District

Attorney Allen's Motion to Dismiss, thereby dismissing only Plaintiff's individual capacity claims against District Attorney Allen.  *See generally* [Doc. 104].  Thus, Plaintiff's facial and as applied challenges to the Statute[3] against District Attorney Allen—in his official capacity as District Attorney for the 4th Judicial District of Colorado[4]—remain.  [*Id.*].

On February 24, 2023, the Parties jointly moved for an extension of time to file dispositive motions.  [Doc. 111].  In so doing, the Parties represented their belief that an anticipated ruling from the United States Supreme Court in *Counterman v. Colorado*, 600 U.S. 66 (2023), would be highly relevant to the instant case.  [*Id.* at 1–2; *see also* [Doc. 67 at 11].  Given the length of the requested extension and the fact that discovery in this case had closed, the Court administratively closed the case pending the Supreme Court's decision in *Counterman*.  [Doc. 112].  After the Supreme Court issued its decision on June 27, 2023, the Parties jointly contacted the Court and, on July 18, 2023, the Court reopened this matter and set the dispositive motions deadline for September 15, 2023. [Doc. 117].  Both Parties have timely filed motions under Rule 56 seeking summary

---

[3] Defendant suggests in one place in its affirmative Motion for Summary Judgment that the only remaining claim is whether Colo. Rev. Stat. § 18-9-313(2.7) is unconstitutional on its face.  *See* [Doc. 121 at 2].  But later in that same motion and in his Response to Plaintiff's Motion for Summary Judgment, Defendant acknowledges that the First Amended Complaint contains two claims for relief seeking: "(1) a declaration that C.R.S. § 18-9-313(2.7) is unconstitutional on its face as it proscribes online publication of a protected persons personal information which amounts to a content-based restriction on his First Amendment right to free speech; and (2) a declaration that C.R.S. § 18-9-313(2.7) is unconstitutional as applied to publication of the video, the Affidavit of Service and the personal information for Trooper Hiller and his wife."  [*Id.* at 5; Doc. 124 at 1–2].

[4] District Attorney Allen is the elected district attorney for Colorado's Fourth Judicial District with apparent prosecutorial powers, including with respect to the Statute.  *See* [Doc. 88 at 9 n.9 (citing [Doc. 71 at 2])].  A claim against District Attorney Allen in his official capacity should be understood as a claim against the Office of District Attorney for the 4th Judicial District of Colorado.  *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (noting that the government entity is "the real party in interest" in an official capacity suit).

judgment on Plaintiff's claims that are ripe for review. But because this Court finds that Plaintiff lacks standing, it does not reach the substantive arguments presented by the Motions.

## LEGAL STANDARD

"Standing is a jurisdictional issue that may be raised by the court at any time." *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998) (quotation omitted). "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const. art. III, § 2). The doctrine of standing serves as "[o]ne of those landmarks" in identifying "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Under Article III, standing requires at least three elements: injury in fact, causation, and redressability. *Id.* at 560–61. These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

Although this Court does not reach the substantive issues presented by the cross motions for summary judgment, the undisputed material facts in the record inform its determination with respect to standing. At the summary judgment stage, a plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations. *Id*.

## UNDISPUTED MATERIAL FACTS

The material facts set forth in this section are drawn from the record before the Court and are undisputed.

1. Mr. Scott is a process server and the owner of a company in the business of serving process.  [Doc. 35 at ¶¶ 13–15; Doc. 119 at ¶ 1; Doc. 124 at ¶ 1].

2. Mr. Scott is also a private investigator licensed in Colorado.  [Doc. 35 at ¶ 70; Doc. 119 at ¶ 2; Doc. 124 at ¶ 1].

3. On March 12, 2021, Mr. Scott was asked by attorney Joseph C. Maher's office to serve a subpoena from the Colorado Department of Revenue upon Trooper Hiller.  [Doc. 35 at ¶¶ 21–22; Doc. 119 at ¶ 3; Doc. 119-2; Doc. 124 at ¶ 1].

4. Trooper Hiller is a "peace officer" as defined in Colo. Rev. Stat. § 18-9-313(1)(k). [Doc. 35 at ¶ 11; Doc. 121 at ¶ 2; Doc. 125 at ¶ 2].

5. Trooper Hiller is a "protected person" as defined in Colo. Rev. Stat. § 18-9-313(1)(n). [Doc. 35 at ¶ 11; Doc. 121 at ¶ 3; Doc. 125 at ¶ 3].

6. The subpoena compelled Trooper Hiller to attend a virtual hearing on March 24, 2021.  [Doc. 119-2; Doc. 119 at ¶ 4; Doc. 124 at ¶ 1].

7. From March 12 through March 16, 2021, Mr. Scott attempted to coordinate with Trooper Hiller on a time and place for service, but Trooper Hiller failed or refused to do so.  [Doc. 35 at ¶¶ 23–28, 30; Doc. 119 at ¶ 5; Doc. 119-3; Doc. 124 at ¶ 1].

8. On March 17, 2021, Mr. Scott used a body worn camera to video record his attempt to serve the subpoena on Trooper Hiller at Trooper Hiller's home.  [Doc. 35 at ¶¶ 32–37, 41; Doc. 119 at ¶¶ 6, 10; Doc. 124 at ¶ 1].

9. At approximately 8:44 a.m., Mr. Scott knocked on Trooper Hiller's front door. [Doc. 35 at ¶ 31; Doc. 124 at ¶ 10; Doc. 126 at 7 ¶ 10].

10. Trooper Hiller's wife answered the door and tried to summon Trooper Hiller, who she claimed was sleeping.  She told Mr. Scott that she would check with Trooper

8

Hiller and come back and proceeded to close the door while Mr. Scott waited outside. [Doc. 35 at ¶ 32; Doc. 124 at ¶ 11; Doc. 126 at 7 ¶ 11].

11. Approximately one minute later, Trooper Hiller's wife returned to the front door to speak with Mr. Scott relating to the subpoena. Trooper Hiller's wife then returned inside the home, closing the door behind her. [Doc. 35 at ¶ 33; Doc. 124 at ¶ 12; Doc. 126 at 7 ¶ 12].

12. After several minutes, Mr. Scott knocked loudly on the front door. No one answered. [Doc. 35 at ¶ 37; Doc. 124 at ¶ 13; Doc. 126 at 8 ¶ 13].

13. Ultimately, Trooper Hiller refused to come to the door to accept service of the subpoena. [Doc. 35 at ¶¶ 32–37; Doc. 119 at ¶ 6; Doc. 124 at ¶ 1].

14. Mr. Scott subsequently taped the subpoena to Trooper Hiller's front door. [Doc. 35 at ¶ 38; Doc. 119 at ¶ 7; Doc. 124 at ¶ 1].

15. Mr. Scott completed an Affidavit of Service, wherein he recounted his efforts to serve Trooper Hiller and included Trooper Hiller's full name, date of birth, address, phone number, vehicle description, and license plate, and Trooper Hiller's wife's full name and date of birth. [Doc. 35 at ¶ 44; Doc. 119 at ¶ 9; Doc. 119-3 at 5–7; Doc. 124 at ¶ 3].

16. Moments after Mr. Scott left Trooper Hiller's residence on March 17, 2021, Trooper Hiller sent Mr. Scott an email directing him to travel to Divide, Colorado that evening to complete service. [Doc. 35 at ¶ 43; Doc. 119 at ¶ 13; Doc. 119-3 at 5; Doc. 124 at ¶ 5].

17. Mr. Scott responded to Trooper Hiller's email and attached the Affidavit of Service, indicating that service was already complete. [Doc. 119 at ¶ 14; Doc. 119-3 at 6; Doc. 124 at ¶ 5].

18. Later that same day, Mr. Maher agreed in writing to redact Trooper Hiller's personal identifying information from the Affidavit of Service "before filing" it with the Department of Revenue. [Doc. 119 at ¶ 15; Doc. 119-4 at 3; Doc. 124 at ¶ 6].

19. On or about March 23, 2021, Trooper Hiller filed a complaint against Mr. Scott with the Office of Private Investigator Licensure, a division of the Colorado Department of Regulatory Agencies (the "DORA Complaint"), alleging that the Affidavit of Service made Trooper Hiller's personal information public. [Doc. 35 at ¶¶ 49, 70; Doc. 119 at ¶ 16; Doc. 119-5 at 3–6; Doc. 124 at ¶ 6].

20. On March 23, 2021, Mr. Scott immediately notified Mr. Maher's office of the DORA Complaint. [Doc. 119 at ¶ 17; Doc. 119-6; Doc. 124 at ¶ 6].

21. Trooper Hiller also submitted a version of the DORA Complaint to Mr. Maher's office via email (the "Email Complaint"), which in turn gave notice of the same to Mr. Scott. [Doc. 119 at ¶ 18; Doc. 119-4; Doc. 119-7; Doc. 124 at ¶ 6].

22. On April 1, 2021, Mr. Scott responded to the DORA Complaint. [Doc. 119 at ¶ 21; Doc. 119-8 at 1–6; Doc. 124 at ¶ 6].

23. That same day, Mr. Scott shared his response to the Email Complaint with Mr. Maher's office. [Doc. 119 at ¶ 22; Doc. 119-9; Doc. 124 at ¶ 6].

24. On April 7, 2021, Trooper Hilled filed a version of his DORA Complaint with the Process Servers Association of Colorado (the "PSACO Complaint"). [Doc. 119 at ¶ 19; Doc. 119-10; Doc. 124 at ¶ 6].

25. That same day, Mr. Scott shared his response to the PSACO Complaint with the Process Servers Association of Colorado. [Doc. 119 at ¶ 23; Doc. 119-11; Doc. 124 at ¶ 6].

26. In the DORA, Email, and PSACO Complaints, Trooper Hiller asserted that Mr. Scoot "deliberately and intentionally added . . . personal information about me and my family to an affidavit," and did so "intentionally and deliberately [to] jeopardize[] my safety, along with my family's safety." [Doc. 119 at ¶ 20; Doc. 119-5; Doc. 119-7; Doc. 119-10; Doc. 124 at ¶ 6].

27. Mr. Maher's office indicated to Mr. Scott that it was "not upset at all with how [Mr. Scott] handled [Trooper Hiller's] service." [Doc. 119 at ¶ 25; Doc. 119-6 at 3; Doc. 124 at ¶ 6].

28. On April 27, 2021, the Process Servers Association of Colorado expelled Mr. Scott from membership in the association based on Trooper Hiller's implicit assertion that Mr. Scott had violated C.R.S. § 18-9-313(2.7). [Doc. 119 at ¶ 26; Doc. 119-12 at 1; Doc. 124 at ¶ 6].

29. The Association explicitly found that Mr. Scott violated "the Colorado Revised Statute regarding disclosure of law enforcement personal information" and attached a copy of the Statute. [Doc. 119 at ¶ 27; Doc. 119-12 at 1; Doc. 124 at ¶ 6].

30. On May 19, 2021, the Office of Private Investigator Licensure dismissed Trooper Hiller's DORA Complaint due to "insufficient grounds to warrant the commencement of formal disciplinary proceeding." [Doc. 119 at ¶ 24; Doc. 119-13; Doc. 124 at ¶ 6].

31. Mr. Scott wishes to publish the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet to defend himself against Trooper Hiller's accusations and to hold Trooper Hiller publicly accountable.

[Doc. 119 at ¶ 29; Doc. 119-1 at ¶ 8; Doc. 124 at ¶ 7 ("Defendant cannot dispute that Plaintiff wishes or intends to do those things . . . .")].

32. Mr. Scott intends to develop a website to assist Colorado citizens in locating law enforcement officers for the purpose of serving process or subpoenas upon the law enforcement officers, potentially including publication of personal identifying information. [Doc. 119 at ¶ 30; Doc. 119-1 at ¶ 27; Doc. 124 at ¶ 7].

33. Mr. Scott also intends to develop a website where members of the public can post information about law enforcement officers as may be necessary and appropriate to holding them to account for irresponsible or inappropriate conduct, including publication of their personal identifying information. [Doc. 119 at ¶ 31; Doc. 119-1 at ¶ 28; Doc. 124 at ¶ 7].

## ANALYSIS

Plaintiff seeks a declaration that the Statute is unconstitutional—both on its face and as applied to the facts of this case—under the First Amendment of the United States Constitution. [Doc. 119]. The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const. amend. I; *see also Packingham v. North Carolina*, 582 U.S. 98, 101 (2017) (noting the First Amendment's Free Speech Clause is "applicable to the States under the Due Process Clause of the Fourteenth Amendment"). "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (alteration in original)).

**I.     Standing**

As a threshold matter, the Court cannot consider the merits of Plaintiff's claims unless Plaintiff has standing. "[F]ederal courts have an historic obligation to avoid unnecessarily deciding constitutional questions." *United States v. Ramos*, 695 F.3d 1035, 1047 (10th Cir. 2012). Indeed:

> Federal courts are courts of limited jurisdiction. They have the authority to adjudicate specific controversies between adverse litigants over which and over whom they have jurisdiction. In the exercise of that authority, they have a duty to decide constitutional questions when necessary to dispose of the litigation before them. But they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.

*Id.* (quoting *Cnty. Ct. of Ulster Cnty. v. Allen*, 442 U.S. 140, 154 (1979)).

To assure that the Court has jurisdiction to consider this case on the merits, the Court must first determine whether Plaintiff has established the requisite injury in fact, causation, and redressability to confer Article III standing. *See 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1171 (10th Cir. 2021), *rev'd on other grounds*, 600 U.S. 570 (2023). For the following reasons, the Court concludes that Plaintiff has failed to establish a cognizable injury in fact. As a result, Plaintiff lacks standing to bring any of his claims and, without a justiciable controversy, this Court lacks subject matter jurisdiction over this matter.

   **A.     Injury in Fact in Pre-Enforcement Challenges**

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc) (quoting *Lujan*, 504 U.S. at 560). The Tenth Circuit has recognized that "the First Amendment

context creates unique interests that lead us to apply the standing requirements somewhat more leniently, facilitating pre-enforcement suits." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (citing *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003)). In the context of a pre-enforcement challenge, a party must establish "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); *see also Peck*, 43 F.4th at 1129–30 (setting forth the standing requirements for pre-enforcement challenges).  The Tenth Circuit applies the same test whether the challenge is as-applied or facial.  *See, e.g.*, *Phelps v. Hamilton*, 122 F.3d 1309, 1326–27 (10th Cir. 1997); *303 Creative LLC*, 6 F.4th at 1171–72.

This Court previously addressed Plaintiff's standing to bring a pre-enforcement claim in the context of a motion to dismiss.  *See* [Doc. 104 at 10–14].  Because there was apparently

> no dispute that Plaintiff ha[d] alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, in his desire "to publicly publish the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet in the future to publicly defend [himself] against Trooper Hiller['s] accusations and to hold him to public account,"

[*id.* at 12 (quoting [Doc. 35 at ¶¶ 83–97; Doc. 78-13 at ¶ 8] (first alteration added))], the Court's inquiry focused on the second element—i.e., whether Plaintiff had met his burden with respect to "a credible threat of prosecution,"[5] *see* [*id.* at 10–14].  Notwithstanding this

---

[5] The Court also noted that the Tenth Circuit has observed that standing can alternatively be established by alleging "a credible threat of future prosecution plus an ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights.").  [Doc. 104 at 11 n.6 (quoting *Peck*, 43 F.4th at 1129–30)].  The Court already

Court's previous conclusion, the Court now considers whether the evidentiary record establishes that Plaintiff's "course of conduct" is at least "arguably . . . proscribed by [the] statute," i.e., Colo. Rev. Stat. § 18-9-313(2.7).  *Susan B. Anthony List*, 573 U.S. at 162 (quoting *Babbitt*, 442 U.S. at 298 (alterations in original)).

### B.     The Statute Plainly Requires an "Imminent and Serious Threat"

When analyzing claims arising under Colorado law, this Court "must follow the most recent decisions of the [relevant] state's highest court," and if no such decision exists, the Court "must attempt to predict what the state's highest court would do."  *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007) (quotation omitted); *accord Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1173 (D. Colo. 2016).  The Court must seek to discern and effectuate the Colorado General Assembly's intent.  *Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 488 P.3d 1065, 1069 (Colo. 2021).  In doing so, the Court must "apply words and phrases in accordance with their plain and ordinary meanings," "look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts," and "avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results."  *Miller v. Crested Butte, LLC*, 549 P.3d 228, 234 (Colo. 2024).  The Court must also respect the General Assembly's choice of language and may neither add words to, nor subtract words from, the Statute.  *See id.*  If the statutory language is unambiguous, then the Court must apply it as written.  *See id.*

---

determined that Plaintiff would be unable to establish standing under the *Walker* test.  *See* [*id.*].

Here, the Statute makes it "unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family" if two conditions are met: (1) "the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family," and (2) "the person making the information available on the internet knows or reasonably should know of the imminent and serious threat." Colo. Rev. Stat. § 18-9-313(2.7). Plaintiff argues that the Statute "assumes that by making a personal [sic] identifying information publicly available 'on the intent' [sic] that a risk to [sic] harm may follow." [Doc. 119 at 14].[6] In other words, Plaintiff claims that the Statute proscribes dissemination of personal information on the internet *because* the Statute assumes the availability of a protected person's personal information on the internet per se "poses an imminent and serious threat" to the protected person's safety.[7]

Plaintiff's interpretation is plainly foreclosed by the language of the Statute. First, the Statute only proscribes publication *if* it presents an imminent and serious threat. Colo. Rev. Stat. § 18-9-313(2.7). If publication alone was sufficient, there would be no need to condition liability on the existence of an imminent and serious threat. Because Plaintiff's interpretation would impermissibly render the words "imminent and serious threat" superfluous and is otherwise foreclosed by the plain language of the Statute, the Court respectfully rejects it. *See Miller*, 549 P.3d at 234.

---

[6] Given Plaintiff's arguments premised on the *lack* of an intent *mens rea* requirement in the Statute, and the fact that the Statute expressly proscribes dissemination of personal information on the internet, the Court construes Plaintiff's reference to "intent"—and not "internet"—as a typographical error.

[7] Plaintiff elsewhere alleges that the term "imminent and serious threat to the protected person's safety," as used in the Statute, is unconstitutionally vague. *See, e.g.*, [Doc. 35 at ¶ 97].

Second, subsection (2.8) includes a requirement that a protected person seeking to remove their personal information made available on the internet through a state or local government official must submit an affidavit establishing the protected person's belief that the availability of their information poses an "imminent and serious threat to" their safety. Colo. Rev. Stat. § 18-9-313(2.8). If the availability of the information alone constituted an "imminent and serious threat," the requirements in subsection (2.8) would be unnecessary and meaningless. In other words, Plaintiff's interpretation of the Statute would also impermissibly ignore other parts of Colo. Rev. Stat. § 18-9-313. *See Miller*, 549 P.3d at 234.

Thus, insofar as Plaintiff asserts that the Statute criminalizes any publication of a protected person's personal information—even without an accompanying "imminent and serious threat"—Plaintiff's interpretation is foreclosed by the plain language of the Statute. The Statute unambiguously conditions liability on the existence of an "imminent and serious threat" and the publisher's knowledge of or reckless disregard for the same.

### C. Plaintiff's Contemplated Conduct is Not Arguably Proscribed by Statute.

Having concluded that the Statute's plain language unambiguously requires two conditions be satisfied before a publisher of a protected person's personal information may be held liable, the Court turns now to consider whether Plaintiff has established a contemplated course of conduct that is at least "arguably proscribed by" the Statute. *See 303 Creative LLC*, 6 F.4th at 1175.

***Publication of the Affidavit and Video.*** Plaintiff wishes to publish the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet to defend himself against Trooper Hiller's accusations and to hold Trooper

17

Hiller publicly accountable.  [UMF ¶ 31].  In briefing the merits of his claim at summary judgment, Plaintiff asserts that there is "no evidence that Mr. Scott knows or reasonably should know of a [sic] 'imminent and serious threat' to Trooper Hiller's safety from the publication of the Video and Affidavit of Service."  [Doc. 125 at 11].  Thus, Plaintiff appears to concede that he lacks any exposure to liability under the Statute.  Although neither Party presses this argument in their respective Motions for Summary Judgment, the Court must address it to assure that the Court has jurisdiction to consider this case on the merits.  *See 303 Creative LLC*, 6 F.4th at 1172.

The record in this case plainly establishes that Trooper Hiller is a protected person, [UMF ¶¶ 4–5]; the Affidavit and Video contain Trooper Hiller's personal information, [UMF ¶¶ 8, 15, 31]; and Plaintiff intends to publish the Affidavit and Video to the internet, [UMF ¶ 31].  But as Plaintiff points out, "there is *no evidence*" to support a finding that he "knows or reasonably knows" of an imminent threat to Trooper Hiller posed by publication of the Affidavit or Video.  [Doc. 125 at 11 (emphasis added)].  Defendant does not dispute this position.  *See generally* [Doc. 124].  Similarly, there is a lack of evidence before the Court to suggest any "imminent" and serious threat to Trooper Hiller's safety.  Both are necessary elements for liability under the Statute.

Indeed, the only evidence that relates to the effect of publication on safety is Trooper Hiller's assertion that publication of his personal information "jeopardizes [his] safety."  *See* [UMF ¶ 26].  But the Statute does not prohibit publication of his information if the publication generally "jeopardizes" his safety—it prohibits publication *only if* it presents an "imminent and serious threat" to his safety.  *See supra*.

18

In reviewing the docket as a whole, this Court cannot find any reference to Trooper Hiller's identification of an imminent and serious threat to his safety. Instead, Trooper Hiller made statements that Mr. Scott "deliberately and intentionally" included personal information for he and his wife in the Affidavit of Service because the criminals will see it—attributing those words to Mr. Scott. *See* [Doc. 119-4 at 1; Doc. 119-5 at 3–6]. Similarly, there is no evidence in the record that Defendant Allen—or anyone associated with the Fourth Judicial District—ever accused Mr. Scott's action of posing an imminent and serious threat to Trooper Hiller through an investigation or otherwise. And there is no evidence, such as an admission through deposition testimony, that establishes that Mr. Scott knew or reasonably should have known of an imminent and serious threat to Trooper Hiller's safety should the Video and Affidavit of Service be published.

In short, based on these findings, the Court concludes that Plaintiff fails to show an injury in fact. *See 303 Creative LLC*, 6 F.4th at 1175. Thus, Plaintiff lacks standing to assert his as-applied or facial challenge to the Statute premised on the publication of the Affidavit and Video.

**The Websites.**  In briefing the instant Motions, Plaintiff asserts for the first time that he also intends to develop two Websites aimed at holding law enforcement officers accountable by facilitating service of process and information sharing about officers who engage in "irresponsible or inappropriate conduct." *See* [UMF ¶¶ 32–33]. To the extent Plaintiff seeks to assert claims premised on the Websites, he lacks standing to bring such claims for the same reasons he lacks standing to bring claims premised on his contemplated posting of the Affidavit and Video. There is also an absence of evidence before the Court to support a finding that the Websites present an "imminent" risk of harm

19

to protected persons, or that Plaintiff knows or reasonably should know of this imminent risk.  Thus, Plaintiff also lacks the requisite injury in fact to bring claims premised on the Websites.[8]

Because Plaintiff lacks standing to bring a pre-enforcement challenge to the Statute, the Amended Complaint is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Plaintiff's Amended Complaint [Doc. 35] is **DISMISSED without prejudice**;

(2)   Plaintiff's Motion for Summary Judgment [Doc. 119] is **DENIED as moot**;

(3)   Defendant's Motion for Summary Judgment [Doc. 121] is **DENIED as moot**; and

(4)   The Clerk of Court is directed to close this case.

DATED:  August 9, 2024                                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[8] In response to Plaintiff's Motion for Summary Judgment, Defendant argues that Plaintiff's as-applied challenge is not ripe because the Statute has not been enforced. [Doc. 124 at 10–12].  Because the Court concludes that Plaintiff lacks the requisite injury in fact to confer Article III standing, the Court will not extensively analyze Defendant's argument, but concurs that any as-applied challenge is not ripe.  *But see Peck*, 43 F.4th at 1133 ("'Standing and ripeness are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention.'  But unlike standing, ripeness issues focus 'not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention.'" (quoting *Walker*, 450 F.3d at 1097, and *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004))).