**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-02011-NYW-KAS

ANDREW THOMAS SCOTT,

Plaintiff,

v.

MICHAEL ALLEN, in his official capacity as the District Attorney for the 4th Judicial District of Colorado,

Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

It is well-documented that instances of abuse, including insults, harassment, threats, physical attacks, and even homicides, of public-facing individuals are at alarming levels. Laws clearly address direct threats or attacks against public-facing individuals. But what can, or should, the law do to address those individuals who may indirectly facilitate threats or attacks by providing information but do not carry them out? On remand from the United States Court of Appeals for the Tenth Circuit, this case lies at the intersection of attempts to increase personal safety for public-facing individuals and the exercise of First Amendment rights.

Plaintiff Andrew Thomas Scott ("Plaintiff" or "Mr. Scott") brings a constitutional challenge to a Colorado state statute that makes it unlawful to publish personal information about a "protected person" if the dissemination of the information poses an "imminent and serious threat" to the protected person and the publisher "knows or reasonably should know" of that "imminent and serious threat." For the reasons set forth

herein, this Court respectfully concludes that Andrew Thomas Scott's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

Mr. Scott commenced this action on July 26, 2021, [Doc. 1], and filed the operative Amended Complaint seeking declaratory relief on January 13, 2022, [Doc. 35]. He seeks a declaration that Colo. Rev. Stat. § 18-9-313 (the "Statute") is unconstitutional on its face and unconstitutional as applied to him.[1] [Doc. 35 at ¶¶ 94–108; Doc. 124 at 1–2].

Originally, this Court issued a Memorandum Opinion and Order (the "Original Order") (1) dismissing without prejudice Plaintiff's Amended Complaint for lack of subject matter jurisdiction on the grounds that Plaintiff lacked standing to bring a pre-enforcement challenge and his as-applied claim was unripe; and (2) denying as moot Andrew Thomas Scott's Motion for Summary Judgment ("Plaintiff's Motion") [Doc. 119] and Defendant's Motion for Summary Judgment ("Defendant's Motion," and together with Plaintiff's Motion, "Motions") [Doc. 121]. [Doc. 127]. But the Tenth Circuit disagreed and reversed the Original Order, holding that Plaintiff has standing because his desired conduct was

---

[1] As the Court has previously noted, *see* [Doc. 127 at 6 n.3], the Court respectfully disagrees with Defendant's contention in Defendant's Motion for Summary Judgment that the only remaining claim is whether Colo. Rev. Stat. § 18-9-313(2.7) is unconstitutional on its face, *see* [Doc. 121 at 2]. This Court has consistently recognized that Plaintiff seeks a declaration that the Statute is unconstitutional on its face <u>and</u> seeks a declaration that the Statute is unconstitutional as applied to the publication of the Video, the Affidavit of Service, and Colorado State Patrol Trooper Charles Hiller's personal identifying information contained therein. [Doc. 88 at 5 (citing Doc. 35 at ¶¶ 94, 103); Doc. 104]. Indeed, in Response to Plaintiff's Motion for Summary Judgment, Defendant acknowledges that Plaintiff's First Amended Complaint contains two claims for relief. [Doc. 124 at 1–2]. And the Tenth Circuit recognized both theories of constitutional violation. [Doc. 134-1 at 3].

arguably proscribed by the Statute and that Plaintiff's as-applied challenge was ripe, and remanded the case to this Court for consideration on the merits. [Doc. 134-1 (the "Tenth Circuit Order")]. On September 25, 2025, the Tenth Circuit issued its mandate to this Court. [Doc. 135]. Defendant Michael Allen ("Defendant" or "Defendant Allen"), in his official capacity as District Attorney for the 4th Judicial District of Colorado, is the only remaining defendant. [Doc. 104].

Following a Joint Status Report by the Parties, [Doc. 140], the Court reinstated the Motions on November 24, 2025, [Doc. 141]. This Court now turns to the substantive issues raised by these cross-motions.

## UNDISPUTED MATERIAL FACTS

The factual and procedural background of this action was discussed in detail in the Original Order, [Doc. 127 at 1–7], as well as in the Tenth Circuit Order, [Doc. 134-1 at 2–8], and the Court will not repeat it here. Instead, the Court focuses upon the undisputed material facts set forth in this section that are drawn from the record before the Court.

1. Plaintiff Andrew Thomas Scott ("Plaintiff" or "Mr. Scott") is a process server and the owner of a company in the business of serving process. [Doc. 35 at ¶¶ 13–15; Doc. 119 at ¶ 1; Doc. 124 at ¶ 1].

2. Mr. Scott is also a private investigator licensed in Colorado. [Doc. 35 at ¶ 70; Doc. 119 at ¶ 2; Doc. 124 at ¶ 1].

3. On March 12, 2021, Mr. Scott was asked by the office of attorney Joseph C. Maher ("Mr. Maher") to serve a subpoena from the Colorado Department of Revenue upon Colorado State Patrol Trooper Charles Hiller ("Trooper Hiller"). [Doc. 35 at ¶¶ 21–22; Doc. 119 at ¶ 3; Doc. 119-2; Doc. 124 at ¶ 1].

4. Trooper Hiller is a "peace officer" as defined in Colo. Rev. Stat. § 18-9-313(1)(k). [Doc. 35 at ¶ 11; Doc. 121 at ¶ 2; Doc. 125 at ¶ 2].

5. Trooper Hiller is a "protected person" as defined in Colo. Rev. Stat. § 18-9-313(1)(n). [Doc. 35 at ¶ 11; Doc. 121 at ¶ 3; Doc. 125 at ¶ 3].

6. The subpoena compelled Trooper Hiller to attend a virtual hearing on March 24, 2021. [Doc. 119-2; Doc. 119 at ¶ 4; Doc. 124 at ¶ 1].

7. From March 12 through March 16, 2021, Mr. Scott attempted to coordinate with Trooper Hiller on a time and place for service, but Trooper Hiller failed or refused to do so. [Doc. 35 at ¶¶ 23–28, 30; Doc. 119 at ¶ 5; Doc. 119-3; Doc. 124 at ¶ 1].

8. On March 17, 2021, Mr. Scott used a body worn camera to video record his attempt to serve the subpoena on Trooper Hiller at Trooper Hiller's home (the "Video"). [Doc. 35 at ¶¶ 32–37, 41; Doc. 119 at ¶¶ 6, 10; Doc. 124 at ¶¶ 1, 3].

9. At approximately 8:44 a.m., Mr. Scott knocked on Trooper Hiller's front door. [Doc. 35 at ¶ 31; Doc. 124 at ¶ 10; Doc. 126 at 7 ¶ 10].

10. Trooper Hiller's wife answered the door and tried to summon Trooper Hiller, who she claimed was sleeping. She told Mr. Scott that she would check with Trooper Hiller and come back. She then closed the door while Mr. Scott waited outside. [Doc. 35 at ¶ 32; Doc. 124 at ¶ 11; Doc. 126 at 7 ¶ 11].

11. Approximately one minute later, Trooper Hiller's wife returned to the front door to speak with Mr. Scott relating to the subpoena. Trooper Hiller's wife then returned inside the home, closing the door behind her. [Doc. 35 at ¶ 33; Doc. 124 at ¶ 12; Doc. 126 at 7 ¶ 12].

12. After several minutes, Mr. Scott knocked loudly on the front door. No one answered. [Doc. 35 at ¶ 37; Doc. 124 at ¶ 13; Doc. 126 at 8 ¶ 13].

13. Ultimately, Trooper Hiller refused to come to the door to accept service of the subpoena. [Doc. 35 at ¶¶ 32–37; Doc. 119 at ¶ 6; Doc. 124 at ¶ 1].

14. Mr. Scott subsequently taped the subpoena to Trooper Hiller's front door. [Doc. 35 at ¶ 38; Doc. 119 at ¶ 7; Doc. 124 at ¶ 1].

15. Mr. Scott completed an Affidavit of Service, wherein he recounted his efforts to serve Trooper Hiller and included Trooper Hiller's full name, date of birth, address, phone number, vehicle description, and license plate, and Trooper Hiller's wife's full name and date of birth. [Doc. 35 at ¶ 44; Doc. 119 at ¶ 9; Doc. 119-3 at 7–8; Doc. 124 at ¶ 3].

16. Moments after Mr. Scott left Trooper Hiller's residence on March 17, 2021, Trooper Hiller sent Mr. Scott an email directing him to travel to Divide, Colorado that evening to complete service. [Doc. 35 at ¶ 43; Doc. 119 at ¶ 13; Doc. 119-3 at 5; Doc. 124 at ¶ 5].

17. Mr. Scott responded to Trooper Hiller's email and attached the Affidavit of Service, indicating that service was already complete. [Doc. 119 at ¶ 14; Doc. 119-3 at 6; Doc. 124 at ¶ 5].

18. Later that same day, Mr. Maher agreed in writing to redact Trooper Hiller's personal identifying information from the Affidavit of Service "before filing" it with the Department of Revenue. [Doc. 119 at ¶ 15; Doc. 119-4 at 2; Doc. 124 at ¶ 6].

19. On or about March 23, 2021, Trooper Hiller filed a complaint against Mr. Scott with the Office of Private Investigator Licensure, a division of the Colorado Department of Regulatory Agencies, alleging that the Affidavit of Service made Trooper

Hiller's personal information public (the "DORA Complaint"). [Doc. 35 at ¶¶ 49, 70; Doc. 119 at ¶ 16; Doc. 119-5 at 3–6; Doc. 124 at ¶ 6].

20. On March 23, 2021, Mr. Scott immediately notified Mr. Maher's office of the DORA Complaint. [Doc. 119 at ¶ 17; Doc. 119-6; Doc. 124 at ¶ 6].

21. Trooper Hiller also submitted a version of the DORA Complaint to Mr. Maher's office via email (the "Email Complaint"), which in turn gave notice of the same to Mr. Scott. [Doc. 119 at ¶ 18; Doc. 119-4; Doc. 119-7; Doc. 124 at ¶ 6].

22. On April 1, 2021, Mr. Scott responded to the DORA Complaint. [Doc. 119 at ¶ 21; Doc. 119-8 at 1–6; Doc. 124 at ¶ 6].

23. That same day, Mr. Scott shared his response to the Email Complaint with Mr. Maher's office. [Doc. 119 at ¶ 22; Doc. 119-9; Doc. 124 at ¶ 6].

24. On April 7, 2021, Trooper Hilled filed a version of his DORA Complaint with the Process Servers Association of Colorado (the "PSACO Complaint"). [Doc. 119 at ¶ 19; Doc. 119-10; Doc. 124 at ¶ 6].

25. That same day, Mr. Scott shared his response to the PSACO Complaint with the Process Servers Association of Colorado. [Doc. 119 at ¶ 23; Doc. 119-11; Doc. 124 at ¶ 6].

26. In the DORA, Email, and PSACO Complaints, Trooper Hiller asserted that Mr. Scott "deliberately and intentionally added . . . personal information about me and my family to an affidavit," and did so "intentionally and deliberately [to] jeopardize[] my safety, along with my family's safety." [Doc. 119 at ¶ 20; Doc. 119-5 at 6; Doc. 119-7 at 5; Doc. 119-10 at 7; Doc. 124 at ¶ 6].

27. Mr. Maher's office indicated to Mr. Scott that it was "not upset at all with how [Mr. Scott] handled [Trooper Hiller's] service." [Doc. 119 at ¶ 25; Doc. 119-6 at 3; Doc. 124 at ¶ 6].

28. On April 27, 2021, the Process Servers Association of Colorado expelled Mr. Scott from membership in the association based on Trooper Hiller's implicit assertion that Mr. Scott had violated C.R.S. § 18-9-313(2.7). [Doc. 119 at ¶ 26; Doc. 119-12 at 1; Doc. 124 at ¶ 6].

29. The Association explicitly found that Mr. Scott violated "the Colorado Revised Statute regarding disclosure of law enforcement personal information" and attached a copy of the Statute. [Doc. 119 at ¶ 27; Doc. 119-12 at 1; Doc. 124 at ¶ 6].

30. On May 19, 2021, the Office of Private Investigator Licensure dismissed Trooper Hiller's DORA Complaint due to "insufficient grounds to warrant the commencement of formal disciplinary proceedings." [Doc. 119 at ¶ 24; Doc. 119-13; Doc. 124 at ¶ 6].

31. Mr. Scott wishes to publish the Video and Affidavit of Service, including Trooper Hiller's personal identifying information therein, on the internet to defend himself against Trooper Hiller's accusations and to hold Trooper Hiller publicly accountable. [Doc. 119 at ¶ 29; Doc. 119-1 at ¶ 8; Doc. 124 at ¶ 7 ("Defendant cannot dispute that Plaintiff wishes or intends to do those things . . . .")].

## LEGAL STANDARD

Under Rule 56 of the Federal Rule of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A

dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). However, the summary-judgment burden slightly differs depending on which party bears the ultimate burden at trial. A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). But "if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). A moving party who bears the burden at trial "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Anderson*, 477 U.S. at 255; *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views each Motion in the light most favorable to the nonmoving party. *Banner Bank*, 916 F.3d at 1326.

## ANALYSIS

The Statute provides, in relevant part:

> It is unlawful for a person to knowingly make available on the internet personal information about a protected person or the protected person's immediate family if the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.

Colo. Rev. Stat. 18-9-313(2.7)(a); *see also* [Doc. 35 at ¶ 10 (reflecting this same language at the time of the filing of the Amended Complaint); Doc. 110 at ¶ 10]. A "protected person" under the Statute is expressly defined and includes a "peace officer," which is defined to include a "law enforcement officer." Colo. Rev. Stat. § 18-9-313(1)(k) (incorporating by reference Colo. Rev. Stat. § 16-2.5-101, which defines "peace officer" as synonymous with "law enforcement officer"), § 18-9-313(1)(n) (defining "protected person" to include "peace officer"); *see also* [Doc. 134-1 at 3]. And "personal information" is defined as:

> [T]he home address, home telephone number, personal mobile telephone number, pager number, personal email address, social security number, driver's license number, federal tax identification number, bank account number, credit or debit card number, or a personal photograph of a participant in the address confidentiality program or protected person; directions to the home of a participant in the address confidentiality program or protected person; or photographs of the home or vehicle of a participant in the address confidentiality program or protected person.

Colo. Rev. Stat. § 18-9-313(1)(l). Any violation of the Statute is a class 1 misdemeanor. *Id.* at § 18-9-313(2.7)(b).

Each Party seeks judgment as a matter of law as to the constitutionality—or unconstitutionality—of the Statute facially, and as applied to Mr. Scott. A "facial challenge considers the [Statute]'s application to all conceivable parties," while Plaintiff's "as-applied challenge tests the application of [the Statute] to the facts of [his] concrete case." *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014) (quotation omitted). Because "[a]s-applied challenges are the basic building blocks of constitutional adjudication," *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1328 (2000)), the Court begins there,[2] *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989) (observing that that "[i[t is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to a [facial challenge] . . . before it is determined that the statute would be valid as applied.").

## I. As-Applied Challenge

The First Amendment, which applies to states and local governments through the Due Process Clause of the Fourteenth Amendment, *Packingham v. North Carolina*, 582 U.S. 98, 101 (2017), prohibits laws "abridging the freedom of speech," U.S. Const. amend. I. At its core, the First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,"

[2] While the Parties largely collapse their arguments as to Mr. Scott's two claims, the claims and the applicable standards are distinct, as acknowledged by Defendant, [Doc. 124 at 6], and the Court separates their respective analyses accordingly.

even if it may "include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). It means that, generally, "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)).

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816–17 (2000) (collecting cases).[3] This burden includes, if applicable, "proving that the speech [the Government] seeks to prohibit is unprotected." *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 620 n.9 (2003); *see also N.Y. State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1, 24–25 (2022) (explaining that the "burden [is] on the government to show that a type of speech belongs to a 'historic and traditional categor[y]' of constitutionally unprotected speech 'long familiar to the bar'" (quoting *Stevens*, 559 U.S. at 468–71)). And in cases regarding content-based laws, i.e. those that target speech based on its communicative content, this burden includes proving that the law "satisf[ies] strict scrutiny." *Free Speech Coal., Inc. v. Paxton*, 606

[3] The presumption of constitutionality that Defendant advocates for in both Defendant's Motion and its Response to Plaintiff's Motion is inapplicable here. *See* [Doc. 121 at 5–6 (citing Colorado cases that "statutes are presumed to comport with constitutional standards" and in order to succeed on a facial or as-applied attack, it is the *challenger's* burden to prove that a statute is "unconstitutional beyond a reasonable doubt"); Doc. 124 at 4–5, 10–11 (citing the same Colorado law "reasonable doubt" standard)]. While it is true that "[d]uly enacted laws are ordinarily presumed constitutional," as discussed more fully herein, "when a law infringes on the exercise of First Amendment rights, its proponent . . . bears the burden of establishing its constitutionality." *iMatter*, 774 F.3d at 1263 (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Mun. of Golden*, 744 F.2d 739, 746 (10th Cir. 1984)); *see also Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th Cir. 2012) ("[The] presumption [of constitutionality] does not apply when the challenged statute infringes upon First Amendment rights.").

U.S. 461, 471 (2025) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). In fact, "[c]ontent-based regulations are presumptively invalid, and the Government bears the burden to rebut that presumption." *Playboy*, 529 U.S. at 817 (quotation omitted); *Peck v. McCann*, 43 F.4th 1116, 1134 (10th Cir. 2022).

An as-applied challenge "tests the application of that restriction to the facts of a plaintiff's concrete case." *Harmon v. City of Norman*, 61 F.4th 779, 789 (10th Cir. 2023) (quotation omitted). To succeed on an as-applied challenge, the plaintiff must provide "a developed factual record and the application of a statute to [him]." *Id*. (quotation omitted). Accordingly, the Court first tests the application of the Statute to the undisputed facts as set forth above.

**A. Protected Speech**

The Court first considers whether Mr. Scott's proposed publication of the Video and Affidavit, which include "personal information" such as Trooper Hiller's home address, phone number, and even photographs of his or his wife's likeness, constitutes protected speech. *See City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (observing that a First Amendment challenge to a statute requires the Court to first consider whether the speech or conduct is protected by the United States Constitution). The Supreme Court recognizes several categories of unprotected speech, or speech entitled to only diminished protection. *See Counterman v. Colorado*, 600 U.S. 66, 73–78 (2023). For example, the First Amendment's protections do not extend to true threats or incitements to imminent lawless action. *Id*. Plaintiff bears the burden of establishing that the speech at issue is constitutionally protected speech. *See Verlo v. Martinez*, 820 F.3d 1113, 1128

(10th Cir. 2016). If the speech is constitutionally protected, then the Court considers whether the statute is unconstitutional under the applicable standard of review. *Id.*

The disclosure of truthful information which has been lawfully obtained is generally protected by the First Amendment. *See Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989). Defendant Allen concedes that the Statute "does not criminalize the making of a 'true threat'" and that Mr. Scott is not making a "true threat." *See* [Doc. 124 at 9; Doc. 121 at 9 n.1 ("Upon further review the facts of this case do not lend themselves to the idea that the publication of a protected person's personal information constitutes a 'true threat.'")]; *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where *the speaker* means to *communicate a serious expression of an intent to commit an act of unlawful violence* to a particular individual or group of individuals." (emphasis added)). Instead, Defendant Allen relies on "the reasoning behind the true threat exception to the principles of free speech [to] provide[] a foundation for the government's compelling interest to satisfy the strict scrutiny requirement." [Doc. 121 at 9].

Defendant seems to make a passing argument that Mr. Scott's intended speech is not protected under the First Amendment because it "is not for the furtherance of a 'legitimate public interest' or a 'matter of public significance' as described by the cited case law but instead serves the sole interest of Mr. Scott." [Doc. 124 at 6]. But he does not develop this argument, *see generally* [Doc. 124; Doc. 121], and conclusory and undeveloped arguments are insufficient to present the issue to the Court for review, *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (declining to consider "unsupported and inadequately briefed" argument that was "vague, confusing, [and]

conclusory”). It is undisputed that Mr. Scott wishes to publish the Video and Affidavit of Service, including Trooper Hiller’s personal identifying information therein, on the internet to defend himself against Trooper Hiller’s accusations and to hold Trooper Hiller publicly accountable. [Doc. 119 at ¶ 29; Doc. 119-1 at ¶ 8; Doc. 124 at ¶ 7]. In any case, this Court respectfully finds that Plaintiff has carried his burden of demonstrating that the personal information at issue as captured by the Video and Affidavit has public significance because it is inextricably associated with the issue of political speech, here, police accountability, regardless of whether Mr. Scott’s personal interests are being simultaneously served. *See, e.g.*, *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1016 (E.D. Cal. 2017); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1249 (N.D. Fla. 2010).[4]

It is undisputed—and the Court agrees—that the Statute regulates speech based on content: it criminalizes making “personal information” as defined by the Statute about protected people and their family available on the internet under certain circumstances.

[4] The Court does not reach the same conclusion about Mr. Scott’s intentions to (1) develop a website to assist Colorado citizens in locating law enforcement officers for the purpose of serving process or subpoenas upon the law enforcement officers, potentially including publication of personal identifying information, [Doc. 119 at ¶ 30; Doc. 119-1 at ¶ 27; Doc. 124 at ¶ 7], and (2) develop a website where members of the public can post information about law enforcement officers as may be necessary and appropriate to hold them to account for irresponsible or inappropriate conduct, including publication of their personal identifying information. [Doc. 119 at ¶ 31; Doc. 119-1 at ¶ 28; Doc. 124 at ¶ 7]. The record before the Court does not contain adequate information regarding these yet-to-be developed websites to determine whether they constitute protected speech. *Cf. Fox*, 492 U.S. at 475 (observing that communications can constitute commercial speech notwithstanding the fact they contain discussions of important public issues and a court must, at the outset, determine whether the expression is protected by the First Amendment). Accordingly, this Court finds that Plaintiff has not sufficiently carried his burden of establishing that these proposed websites are constitutionally protected.

Colo. Rev. Stat. § 18-9-313(2.7); *see* [Doc. 119 at 7 (arguing that "[t]he Statute establishes a content-based restriction of speech"); Doc. 121 at 6 ("Defendant does not dispute that the statute presents a content-based restriction of speech.")]; *see also Reed*, 576 U.S. at 163 (regulation of speech is content-based "if a law applies to particular speech because of the topic discussed or the idea or message expressed"). Thus, the Government bears the burden of proving that the Statute satisfies strict scrutiny, i.e. it is "narrowly tailored to serve compelling state interests." *Peck*, 43 F.4th at 1134–35 (quoting *Reed*, 576 U.S. at 163); *see also* [Doc. 124 at 6–10 (acknowledging that strict scrutiny applies here and "places the burden on the government to show that the statute is supported by a compelling state interest and that it is narrowly drawn to achieve that interest in the least restrictive manner possible" (quotation omitted)); Doc. 121 at 7–9 (same)]. This is a "heavy burden" and requires the Government to demonstrate that the Statute is "the least restrictive means among available, effective alternatives" to accomplish a compelling interest. *Peck*, 43 F.4th at 1135 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 665–66 (2004)).

The Court first notes that the Tenth Circuit foreclosed Defendant's main argument in response to Plaintiff's Motion on the as-applied claim, that "Mr. Scott's challenge to the constitutionality of the Statute in its application to him is not yet ripe." [Doc. 124 at 12; Doc. 134-1 at 18]; *see also Peck*, 43 F.4th at 1129 (observing that the standing requirements in pre-enforcement First Amendment context are "somewhat more lenient[], facilitating pre-enforcement suits"). As discussed above, Defendant's other argument regarding why Mr. Scott's as-applied challenge fails, that "Mr. Scott has failed to establish

the unconstitutionality of the statute, as applied to him, beyond a reasonable doubt," [Doc. 124 at 12], relies on an inapplicable burden of proof, *see supra* n.3.

Nevertheless, the Court will consider Defendant's strict scrutiny arguments that are woven throughout his briefing. *See* [Doc. 124 at 6–10; Doc. 121 at 8–11].

### B. Compelling Interest

Defendant Allen argues identifies the following "compelling interest" served by the Statute:

> [T]he state has a compelling interest in preventing disclosure of personally identifying information of peace officers and the other categories of protected persons listed within § 18-9-313(1)(n) to protect said persons from, among other things, actions of abuse, threats of harm, harassment, intimidation, bullying, physical attacks, stalking, emotional distress, online targeting, and violent protests when the statutorily protected persons are particularly susceptible to such things because of the nature of the public services they provide.

[Doc. 124 at 7]. In other words, the compelling interest here is the protection of law enforcement officers (and other public servants and protected individuals) from various forms of abusive, threatening, and/or violent conduct. While Plaintiff argues both that Colorado's interest in enacting and enforcing the Statute is ill-defined, [Doc. 125 at 5], and "[a] context of a risk of harm from third-persons does not establish the compelling state interest," [Doc. 119 at 8], this Court respectfully disagrees. Like other courts—both federal and state—across the country, the Court finds that the enhancement of safety and security of law enforcement officers, public servants, and other protected persons to foster their ability to carry out their critical functions without fear of personal reprisal is a compelling interest. *See, e.g.*, *Jackson v. Whitepages, Inc.*, 798 F. Supp. 3d 583, 603–04 (N.D. W.Va. 2025) (concluding that protecting public officials and their immediate family members so that they can perform their official duties without fear of reprisal is a

compelling state interest); *Atlas Data Priv. Corp. v. We Inform, LLC,* 758 F. Supp. 3d 322, 337 (D.N.J. 2024) (observing that "in recent years judges, prosecutors, police, correctional officers, and others in law enforcement have been the subject of an ever increasing number of threats and even assassinations," and finding a compelling state interest in enhancing their protection and safety); *Kratovil v. City of New Brunswick*, 261 N.J. 1, 25–26 (N.J. 2025) (holding that there was a compelling interest in enhancing the security of certain public officials in the justice system, including law enforcement officers, "to foster the ability of these public servants who perform critical roles in the justice system to carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions").

But the Statute must also be narrowly tailored to this interest in order to survive strict scrutiny, and the Court turns now to that issue.

**C. Narrowly Tailored**

For content-based restrictions, a law is narrowly tailored "only if it is the least restrictive means of achieving the government's compelling objective." *Verlo*, 820 F.3d at 1134. A court must analyze whether the government could have achieved the same compelling interest in a way that imposed a less onerous burden on speech. *Golan v. Gonzales*, 501 F.3d 1179, 1196 (10th Cir. 2007). Defendant argues that the Statute's restrictions are narrowly tailored because they apply "only when 'the dissemination of personal information poses an imminent and serious threat to the protected person's safety or the safety of the protected person's immediate family and the person making the information available on the internet knows or reasonably should know of the imminent and serious threat.'" [Doc. 124 at 7 (quoting Colo. Rev. Stat. § 18-9-313(2.7))].

Plaintiff disagrees and contends that "the Statute is not narrowly tailored to the purported interest in curtailing the risk of harm form [sic] third-person [sic] because the State may regulate the harm directly," i.e. "Colorado has laws against assaulting peace officers, harassment, menacing, stalking, along with a myriad of statute [sic] protecting citizens and peace officers directly." [Doc. 119 at 8].

This Court concurs with Defendant that the Statute is meaningfully limited by its design that includes: (1) an objective component, i.e., the dissemination of information must pose an imminent and serious threat to the safety of a protected person or to the protected person's immediate family and (2) a subjective, mens rea component, i.e., the person disseminating the protected information on the internet must know or reasonably should know of the imminent and serious threat. These two requirements distinguish the Statute from the laws that have fallen to First Amendment strict scrutiny in the cases relied upon by Plaintiff. *See* [Doc. 119 at 7, 9 (citing *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017) (successful First Amendment facial challenge to a California statute that prohibited the posting or displaying the home address or telephone number of certain government officials with no objective requirement that the dissemination posed an imminent and serious threat to the safety of the government official or mens rea component); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244 (N.D. Fla. 2010) (successful First Amendment facial challenge to Florida statute with no objective requirement that the dissemination of the information constituted intimidation, hinderance, or interruption of a law enforcement officer in the legal performance of his or her duties or posed an imminent and serious threat to the safety of that law enforcement officer); *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135 (W.D. Wash. 2003) (same)); Doc. 125 at 6–

7 (citing same cases)]; *see also Jackson*, 798 F. Supp. 3d at 588–89 (successful First Amendment facial challenge to West Virginia statute that barred the dissemination of personal information to certain individuals involved in the judicial process "under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property"). This Court respectfully concurs with the *Jackson* court that observed that the Colorado statute limited the risk that it restricts more speech than necessary by coupling the subjective component with an objective component. *See Jackson*, 798 F. Supp. 2d at 605–06 & n.16.

And this Court respectfully disagrees with Plaintiff that Colorado regulates the entire scope of the harm through its laws that directly criminalize assault, harassment, menacing, or stalking. Certainly, such direct laws seek to promote the safety and security of protected persons (and their families) so that they may perform their duties without fear of reprisal, and the Parties and the Court agree that Colorado already protects its protected persons and their immediate family members from some of the threats of harm at which the Statute is purportedly aimed without content-based restrictions on protected speech. *See* [Doc. 124 at 9]; Colo. Rev. Stat. §§ 18-3-201 *et seq.* (assault of a peace officer), § 18-9-111 (harassment), § 18-3-206 (menacing), § 18-3-602 (stalking). But by its plain terms, the Statute reaches a subset of harm not necessarily encompassed by those laws, i.e., imminent and serious threat to the safety of a protected person or the protected person's immediate family *posed by the dissemination of personal information* itself. Colo. Rev. Stat. § 18-9-313(2.7)(a). The Court is also skeptical that Defendant Allen could secure conviction of Mr. Scott under the Statute based solely on the

undisputed facts before the Court because of the lack of evidence of an objective imminent and serious threat to Trooper Hiller or evidence of any mens rea on the part of Mr. Scott.

But even against this backdrop, Defendant Allen fails to demonstrate that the Statute as applied to Mr. Scott's undisputed conduct passes constitutional muster. It is undisputed that the threat of prosecution pursuant to the Statute has chilled Mr. Scott's speech insofar as it has prevented him, at a minimum, from publishing the Video and Affidavit related to his attempts to serve Trooper Hiller. To meet the requirement of narrow tailoring, Defendant must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interest. *See Harmon*, 61 F.4th at 791; *Peck*, 43 F.4th at 1135 ("The touchstone [of the narrowly tailored inquiry] is whether the state has shown that no alternative exists that is both 'less restrictive' than the existing law and would effectively achieve the state's compelling interest." (quoting *Ashcroft*, 542 U.S. at 665)). Defendant Allen fails to carry this burden of establishing that less burdensome alternatives would not achieve the stated interest as to Mr. Scott's undisputed conduct. Indeed, Defendant Allen does not even attempt to engage with potential alternatives and, thus, precludes the Court from meaningfully doing so. *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1075 (10th Cir. 2020) ("[T]he only way for the City to evaluate alternatives is to consider them . . . . Because the City presents us with no evidence that it contemplated the relative efficacy or burden on speech of any alternatives, we conclude it has not met its burden" of proving that a regulation is narrowly tailored.). With no such showing, "[i]t would be quite remarkable to hold that speech by

a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party." *Bartnicki v. Vopper*, 532 U.S. 514, 529–30 (2001).

Accordingly, the Court finds on the undisputed material facts in the record that the Statute is unconstitutional under the First Amendment as applied to Mr. Scott. The Court respectfully **GRANTS** Plaintiff's Motion on this basis and **DENIES** Defendant's Motion with respect to the same.

## II. Facial Challenge

"Ordinarily a facial challenge to a statute or regulation cannot succeed unless a plaintiff establishes that no set of circumstances exists under which the law would be valid, or he shows that the law lacks a plainly legitimate sweep." *Pino v. Oliver*, 186 F.4th 750, 758–59 (10th Cir. 2026) (cleaned up). "In First Amendment cases, however, [the Supreme] Court has lowered that very high bar." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). "To provide breathing room for free expression, [the Supreme Court] ha[s] substituted a less demanding though still rigorous standard," *id.* (cleaned up) (citing *United States v. Hansen*, 599 U.S. 762, 769 (2023)), requiring the challenger to "demonstrate[] that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,'" *Hansen*, 599 U.S. at 770 (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). This is the so-called "overbreadth" doctrine. *Id.* "Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* (cleaned up); *see also Moody*, 603 U.S. at 723 ("[The Supreme] Court has therefore made facial challenges hard to win."); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) ("[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying

the will of the people from being implemented in a manner consistent with the Constitution.”).

“The first step in the proper facial analysis is to assess the state laws’ scope. What activities, by what actors, do the laws prohibit or otherwise regulate?” *Moody*, 603 U.S. at 724. The next step is “to decide which of the laws’ applications violate the First Amendment, and to measure them against the rest.” *Id.* at 725. “[A] law’s unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute’s lawful sweep.” *Hansen*, 599 U.S. at 770 (collecting cases); *see also id.* at 782 (faulting the challenger for “fail[ing] to identify a single prosecution for ostensibly protected expression” and instead “offer[ing] a string of hypotheticals”); *Terry v. Drummond*, 183 F.4th 1281, 1295–96 (10th Cir. 2026) (holding that speculation or hypotheticals “will not satisfy the challenger’s burden” on a facial challenge). After conducting this two-step analysis, a court may strike down “even a law with ‘a plainly legitimate sweep’ . . . in its entirety,” but “only if the law’s unconstitutional applications substantially outweigh its constitutional ones.” *Moody*, 603 U.S. at 723–24.

Neither Party identifies or discusses the appropriate standard for a facial constitutional challenge under the First Amendment in federal court.[5] [Doc. 119; Doc. 121; Doc. 124; Doc. 125]. And as a result, neither side engages in any substantive analysis of the law’s scope, comparison of unconstitutional versus constitutional applications, or weighing of the two. Still, “the court is bound to apply the proper

---

[5] The Court acknowledges that some of the cases it cites for the standard for a First Amendment facial challenge were not issued until after the Parties filed their respective Motions for Summary Judgment. However, *Hansen*, *Williams*, and the cases upon which those opinions rely were available at the time of briefing.

standard." *Aylo Freesites, Ltd. v. Hass*, --- F. Supp. 3d ----, 2026 WL 2874132, at *4 (D. Utah Sept. 24, 2026) (citing *Moody*, 603 U.S. at 723–26; *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) ("It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind us to application of an incorrect legal standard . . . .")). Indeed, despite being the party bearing the burden, Mr. Scott does not argue or demonstrate that the Statute prohibits *any* amount of speech beyond his as-applied challenge. *See* [Doc. 119; Doc. 125]. And "[t]he overbreadth doctrine has no application to a case where the Plaintiffs' overbreadth argument is nothing more than a restatement of the First Amendment argument they make on their own behalf." *VoteAmerica v. Schwab*, 121 F.4th 822, 852 (10th Cir. 2024) (cleaned up). Nor has Defendant persuaded this Court that Plaintiff cannot carry such burden as a matter of law. At best, Defendant Allen states baldly—without any examples or citation to record evidence or applicable legal authority—that "[s]ince there are some circumstances where the Statute can be constitutionally applied, the Statute cannot be unconstitutional on its face." [Doc. 124 at 10]. The Court respectfully declines to craft arguments for either side from whole cloth, particularly in a case with significant constitutional import.

Accordingly, treating each Motion separately as it must, the Court respectfully **DENIES both** Plaintiff's Motion as to his facial challenge pursuant to the First Amendment to the Statute **and** Defendant's Motion as to the same. *See Buell*, 608 F.2d at 433 ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Andrew Thomas Scott's Motion for Summary Judgment [Doc. 119] is **GRANTED in part and DENIED in part**;

(2) Defendant's Motion for Summary Judgment [Doc. 121] is **DENIED**;

(3) Colo. Rev. Stat. § 18-9-313(2.7) is deemed **INVALID** as unconstitutional under the First and Fourteenth Amendments of the United States Constitution as applied to the publication of the Video and Affidavit by Plaintiff Andrew Thomas Scott;

(4) Enforcement of Colo. Rev. Stat. § 18-9-313(2.7) as to Plaintiff's publication of the Video and Affidavit as described in Andrew Thomas Scott's First Amended Complaint [Doc. 35 at ¶¶ 85–88, 108] is **ENJOINED**; and

(5) The Parties **SHALL MEET and CONFER** with respect to how they wish to proceed with respect to the facial challenge to Colo. Rev. Stat. § 18-9-313(2.7) and **SHALL FILE** a Joint Status Report regarding the same no later than **November 30, 2026**.

DATED: November 9, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge